Foster, J.
After a hearing in the City Magistrates’ Court of the City of New York, Adolescent Part, the defendant William James, 16 years of age, was adjudicated a “ wayward minor ” and committed to Elmira Deception Center for an indeterminate *84 period. The Appellate Part of the Court of Special Sessions, First Department, has affirmed. Defendant is here by permission.
Section 913-a of the Code of Criminal Procedure provides in part: “ § 913-a. Wayward Minor. Any person between the ages of sixteen and twenty-one who * * * (5) is wilfully disobedient . to the reasonable and lawful commands of parent, guardian or other custodian and is morally depraved or is in danger of becoming morally depraved * * * may be deemed a wayward minor.”
The complaint was made by Elizabeth Long, the mother of the defendant, with the aid of the Probation Department of the Adolescent Part of the Magistrates’ Court. It alleged in substance that defendant, then a minor 16 years of age, was disobedient, associated with people of questionable character, refused to attend school, indulged in intoxication on several occasions, and generally was in danger of becoming morally depraved.
Defendant was brought before the City Magistrates’ Court for arraignment and the following passage appears in the minutes of the arraignment:
“ Court Officer : Now, on these charges, you have a right to the aid of counsel at every' stage of the proceedings and before any further proceeding, and the right to an adjournment to procure counsel.
“ The Court: Now, young man, there is a formal charge against you. I won’t have an immediate hearing on it because I think maybe Mr. Yucalis can persuade you that you have been going the wrong way. I mean, if you feel that is the right thing, Mr. Yucalis, I’ll be willing to go along.”
Defendant was then placed on probation on condition of good behavior, but some two months later, at the request of complainant and the Probation Department, a trial was had before another Magistrate. Judgment was rendered and sentence was imposed on the same day.
According to the testimony of complainant, she and the boy’s father had been divorced about five and one-half years prior to the trial. Defendant was living with her and his sister. The father, a merchant seaman, was away at sea and was not present at the trial. She also testified that she had been having trouble *85 with the defendant for about four or five years. The previous year, she had sent him to boarding school. He did not abide by the rules and remained for only two months. Next, he was sent to Goshen School, Goshen, New York, where he did not apply himself to his studies and became a behavior problem. In June, 1958, after one term, he left the school without permission. Thereafter, complainant enrolled him in public school,, but he would not attend. Several transfers from school to school were made by school officials to induce defendant to attend, but eventually they decided they could do nothing with him.
Since his return from Goshen, complainant testified, defendant had been staying out continuously until 2:00 or 3:00 a.m. Almost every night she smelled alcohol on his breath, but defendant would deny that he had been drinking. On three or four occasions, defendant held parties in the family home. She said she would see evidence of this. Finally, she testified, that the defendant was impudent to her and there was absolutely nothing she could do with him.
Although defendant had been advised when first arraigned that he had the right to the aid of counsel, nothing further was said about this at the trial, where the following exchange occurred between the court and defendant:
‘1 The Court : Do you want to ask your mother any questions or do you want to say something?
“ William James: No. I’d just like to say —
“ The Court : You will have to be sworn first.
“ William James, residing at 408 West 130th Street, having been first duly sworn, testified as follows:
“ By the Court: Q. What do you want to say? ”
Defendant then testified that when he stayed out until 2:00 or 3:00 a.m. it usually was on week ends, or in the Summertime, and that he told his mother where he was going. She merely would say “ Don’t come in too late.” At Goshen, several classmates had' attempted to 1 ‘ boss ’ ’ him, and fights resulted. He was embarrassed to attend public school in New York because he was in a lower grade than others of his age. He admitted to intoxication on two occasions. Defendant was also asked about his presidency at various times of three notorious New York City gangs which, in the absence of defendant, had engaged in a gang war resulting in the death of three youths. He answered that *86 when he joined three years before they merely were clubs but that he quit after the deaths occurred. The court then imposed the indeterminate reformatory term.
Defendant contends upon this appeal that he was entitled to counsel, and not adequately advised of his right thereto and that his constitutional rights were violated when he was sworn as a witness without being advised of his privilege against self incrimination. J The People urge that defendant was not charged with a crime and hence the procedural safeguards prescribed by constitutional and statutory provisions in criminal cases are not applicable here, citing People v. Leivis (260 N. Y. 171, 174) as an authority for this proposition. In that case the defendant, who was under 16 years of age, was charged with being a juvenile delinquent under the Children’s Court Act (L. 1930, ch. 393). A hearing was held in Children’s Court at which the alleged delinquent appeared, accompanied by his mother, sister, and the family clergyman. The basic charge, the theft of money, was admitted by the boy; indeed there was no dispute whatever about the facts. The boy was thereafter adjudged a delinquent and committed to the State Industrial and Agricultural School at Industry, New York. This court held that the proceeding was not a criminal one, and ‘ ‘ there was neither right to nor necessity for the procedural safeguards prescribed by constitution and statute in criminal cases.” (People v. Leivis, supra, p. 177.) ■
The statute involved in the Lewis case and the statute involved here are similar in their essential provisions (Children’s Court Act, § 2, subd. 2, cl. [b]; § 6, subd. 1, cl. [b]; § 22, subds. [b], [c]; cf. Code Grim. Pro. § 913-a, cl. [5]; §§ 913-b, 913-c). Both provide that an adjudication shall not constitute a criminal conviction (Children’s Court Act, § 45; cf. Code Grim. Pro., § 913-dd). For these reasons the People urge that the doctrine asserted in the Leivis case bars any relief to the defendant here on the ground that his constitutional and statutory rights were disregarded.
While superficially the cases may appear to be in parity, there are distinctions which we think are not without significance when considered as a whole. In the Lewis case (supra) the proceeding was in Children’s Court, and the alleged delinquent had whatever benefit there was to be derived from the presence *87 of his mother, sister and a sympathetic clergyman. It was not an adversary proceeding in the sense that cross-examination was called for because there was no dispute as to the facts. In the case here the proceeding was governed by the Code of Criminal Procedure and was instituted in a court of criminal jurisdiction, albeit the Adolescent Part. The complainant was the defendant’s mother, and there was acrimony and open hostility between them. He appeared at the hearing without the aid of counsel, friend, relative or parent. It was an adversary proceeding in that the testimony of the mother and son conflicted in several respects as heretofore indicated.
It is not our function of course to weigh testimony in a proceeding of this character but the disagreements expressed between the mother and son seem to have been material. Two occasions of intoxication, for instance, would not necessarily render one a wayward minor (Code Crim. Pro., § 913-a, cl. [1]; People v. Pikunas, 260 N. Y. 72, 74). Defendant also claimed that he was not willfully disobedient; that he sought and obtained permission to attend late parties. Elementary principles of justice would seem to require that in this situation the testimony of the mother should have been tested by some form of cross-examination before the defendant minor was deprived of his liberty. This problem never arose in the Lewis case (supra) where the facts were not disputed. Here, also, evidence of the defendant’s conduct prior to his sixteenth birthday may have been admitted improperly (People ex rel. Cohen v. Brown, 278 App. Div. 576). Regardless of the technical classification of the proceeding, and there is some ground for the assertion that it was criminal in nature (Matter of Ryan [Hogan], 306 N. Y. 11, 17-18; Matter of Clausi, 296 N. Y. 354, 356; People ex rel. Stolofsky v. Superintendent, 259 N. Y. 115), the rights of the defendant minor were not adequately protected without the aid of counsel. We have no doubt that the trial court acted with the best of motives but that is not a substitute for the principle involved. In the view thus taken, we find it unnecessary to re-examine the doctrine announced in the Lewis case, as counsel for the defendant requests. Suffice it to say that such doctrine should not be applied to the proceeding here under the circumstances disclosed.
*88 The judgment should be reversed and the proceeding remitted for a new hearing.
Chief Judge Desmond and Judges Dye, Fuld, Froessel, Van Voorhis and Burke concur.
Judgment reversed and a new hearing ordered.