15-1426-cv
Nick's Garage, Inc. v. Progressive Casualty Insurance

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2016

(Argued: September 19, 2016     Decided: November 8, 2017)

Docket No. 15-1426-cv
_____

Nick's Garage, Inc.,

*Plaintiff-Appellant*,

v.

Progressive Casualty Insurance Company, National Continental Insurance
Company, Progressive Advanced Insurance Company, Progressive Direct
Insurance Company, Progressive Max Insurance Company, Progressive
Northern Insurance Company, Progressive Preferred Insurance Company,
Progressive Specialty Insurance Company,

*Defendants-Appellees*.
_____

Before:  LEVAL and LOHIER, *Circuit Judges*, and KORMAN, *District Judge*.[*]

---

[*] Judge Edward R. Korman, of the United States District Court for the Eastern District of New York, sitting by designation.

Plaintiff appeals from the judgment of the United States District Court for the Northern District of New York (D'Agostino, *J.*) granting summary judgment in favor of Defendants. Plaintiff, an automobile repair shop, brought claims as assignee of its customers against Defendants, automobile insurance companies, for breach of contract and deceptive business practices under New York General Business Law § 349. Plaintiff alleges that Defendants failed to fulfill their contractual obligation to pay sufficient funds to repair vehicles to their pre-accident condition, and engaged in deceptive practices in claims processing. The district court's grant of summary judgment was premised on its conclusion that there were no genuine issues of material fact on which Plaintiff could prevail, and, as to Plaintiff's claims of deceptive business practices, that such claims were in addition precluded by New York Insurance Law § 2601.

Held, the district court erred in part in granting summary judgment in favor of Defendants on Plaintiff's breach of contract and deceptive practices claims. The Judgment is AFFIRMED IN PART, VACATED IN PART, and REMANDED.

CECELIA R.S. CANNON, Bousquet Holstein PLLC, Syracuse, NY, *for Plaintiff-Appellant*.

KYMBERLY KOCHIS (Veronica M. Wayner *on the brief*), Sutherland Asbill & Brennan LLP, New York, NY, *for Defendants-Appellees*.

LEVAL, *Circuit Judge*:

Plaintiff, Nick's Garage, Inc. ("Garage" or "Plaintiff"), appeals from the judgment of the United States District Court for the Northern District of New York (D'Agostino, *J.*) granting summary judgment in favor of the Defendants, Progressive Casualty Insurance Company and related entities (collectively,

the "Insurer").[1] Garage, an automobile repair shop, brought these claims as assignee of its customers against the Insurer for breach of contract and deceptive business practices under New York General Business Law ("GBL") § 349. Garage alleges that Insurer failed to pay sufficient funds to fulfill its obligation to return the damaged vehicles to pre-accident condition, and engaged in deceptive practices in claims processing. The district court granted summary judgment in favor of Defendants, finding that there were no genuine issues of material fact, and furthermore, as to its claims of deceptive business practices, that such claims were also precluded by New York Insurance Law § 2601.

We conclude that the district court erred in part in granting summary judgment to Insurer on Garage's breach of contract claims. Insurer failed to show its entitlement to judgment for costs relating to labor hours, parts, labor rates, electronic database access, and hazardous waste removal charges, and the absence of genuine disputes of material fact on these issues. Summary

---

[1] Defendants are Progressive Casualty Insurance Company, National Continental Insurance Company, Progressive Advanced Insurance Company, Progressive Direct Insurance Company, Progressive Max Insurance Company, Progressive Northern Insurance Company, Progressive Preferred Insurance Company, and Progressive Specialty Insurance Company.

3

judgment should have been denied for those categories. On the other hand, Insurer demonstrated its entitlement to judgment, and Garage failed to raise a genuine dispute of material fact, on Insurer's payments for paint material costs; the district court properly granted summary judgment to Insurer on that category of claims.

We also conclude that the district court erred in part in granting summary judgment to Insurer on Garage's GBL claims. There is a question of material fact on Garage's claim that Insurer engaged in deceptive practices concerning its labor rates payments, and that claim is not precluded by N.Y. Ins. Law § 2601. On the other hand, the district court properly granted summary judgment to Insurer on Garage's GBL claim that Insurer misled customers regarding their ability to use the repair shop of their choice.

Accordingly, we affirm the judgment in part, vacate the judgment in part, and remand to the district court for further proceedings.

I.     BACKGROUND

Plaintiff Garage is an automobile repair shop in Syracuse, New York. Defendant Insurer issues auto insurance policies in New York. From 2007 to

4

2011, Garage repaired various vehicles that had suffered damage for which the vehicle owners submitted damage claims to Insurer.

The vehicle owners made Garage their designated representative to negotiate with Insurer for coverage of repairs, and assigned their insurance claims to Garage. The assignors fall into two categories: (i) "First-Party Assignors" are Insurer policyholders; and (ii) "Third-Party Assignors" are owners of vehicles that were damaged by Insurer's policyholders. Garage, as assignee, brings claims on behalf of 26 First-Party Assignors and 11 Third-Party Assignors. All of the assignors signed a form captioned, *Authorization and Guideline for Repairs*, undertaking to pay to Garage the balance of its charges for the repairs if Insurer did not pay Garage's full charges. All of the assignors assigned to Garage related claims and rights arising from the property damage insurance claims, and all First-Party assignors assigned their rights under the specified insurance policies to Garage.

Insurance Law § 2601 and Regulation 64, which is Part 216 of the New York State Insurance Department Regulations, provide context for the interactions between repair shops and insurance companies. Section 2601 prohibits insurers from "engag[ing] in unfair claim settlement practices," and

specifies various acts which, when "committed without just cause and performed with such frequency as to indicate a general business practice, shall constitute unfair claim settlement practices." N.Y. Ins. Law § 2601(a). Such acts include "knowingly misrepresenting to claimants pertinent facts or policy provisions relating to coverages at issue," and "not attempting in good faith to effectuate prompt, fair and equitable settlements of claims submitted." *Id.* § 2601(a)(1), (4).

Under Regulation 64, when a claim is made, the insurer may inspect the car, and must negotiate in good faith with the insured or the insured's designated representative and make "a good faith offer of settlement, sufficient to repair the vehicle to its condition immediately prior to the loss." 11 N.Y.C.R.R. § 216.7(b)(1). If after such negotiations the parties cannot reach an "[a]greed price"—*i.e.*, "the amount agreed . . . as the reasonable cost to repair damages to the motor vehicle resulting from the loss," *id.* § 216.7(a)(1)—then the insurer must send the insured a prescribed notice of rights letter, which states the insurer's offer and indicates that, upon the insured's request, the insurer is able to recommend a shop to perform the repairs at the stated offer price, *id.* §§ 216.7(b)(14)(i), 216.12.

For the vehicles in the instant case, the typical interaction between Garage and Insurer proceeded as follows: Owners brought the damaged vehicles to Garage seeking an estimate on the necessary repairs; Garage inspected the vehicles and sent Insurer an estimate of the repairs Garage determined were necessary to return the vehicles to their pre-accident condition. Insurer then sent a Managed Repair Representative ("MRR") to inspect the vehicle and provided an estimate as to the cost to repair the vehicle to pre-loss condition. Garage responded by sending Insurer a notice of deficiencies, identifying items that were omitted or insufficient in Insurer's estimates and informing Insurer that there was no agreed upon amount for the repairs. This process was sometimes repeated with supplements if additional damage was discovered during the course of the repair. Garage would repair the vehicles after it had received the estimate from Insurer.

As relevant to this appeal, Garage brings two categories of claims. For Plaintiff's first category of claims, which it brings as assignee of First-Party Assignors, Garage claims that Insurer breached its contractual obligations to the First-Party Assignors by failing to pay the amount necessary to return the vehicles to their pre-accident condition, leaving the First-Part Assignors liable

to Garage for the balance of the repair cost to the extent that Garage's charge exceeded Insurer's payment. Garage alleges five categories of under-payments: (1) failing to allow for sufficient labor hours to make necessary repairs; (2) failing to pay for original equipment manufacturer ("OEM") parts when the non-OEM parts suggested by Insurer were inadequate to return the vehicle to pre-accident condition; (3) paying insufficient labor rates; (4) failing to pay the amount necessary for paint materials; (5) failing to pay for charges for accessing an electronic database and removing hazardous waste.

As relevant here, Insurer's insurance policy provides:

Limits of Liability
1. The limit of liability for loss to a covered auto, non-owned auto, or custom parts or equipment is the lowest of:
   ***
   c. the amount necessary to repair the damaged property to its pre-loss condition reduced by the applicable deductible; or . . . .
   ***
2. Payments for loss to a covered auto, non-owned auto, or custom parts or equipment are subject to the following provisions:
   ***
   d. In determining the amount necessary to repair damaged property to its pre-loss condition, the amount to be paid by [Insurer]:
      i. will not exceed the prevailing competitive labor rates charged in the area where the property is to be repaired and the cost of repair or replacement parts and equipment, as reasonably determined by [Insurer]; and

8

  ii. will be based on the cost of repair or replacement parts and equipment which may be new, reconditioned, remanufactured, or used, including, but not limited to:

   (a) original manufacturer parts or equipment; and

   (b) nonoriginal manufacturer parts or equipment.

Confidential App. 31–32 (emphasis omitted).

For its second category of claims, Garage alleges that Insurer violated GBL § 349 by engaging in deceptive acts in handling the claims of both the First-Party Assignors and Third-Party Assignors. Specifically, Garage claims Insurer misled consumers by falsely representing to them that it was willing to pay prevailing competitive labor rates, and by misrepresenting consumers' ability to obtain repairs at the shop of their choice.

Garage originally filed this suit in New York State Supreme Court. On May 10, 2012, Insurer removed to federal court, which had diversity jurisdiction pursuant to 28 U.S.C. § 1332. On February 27, 2013, the district court granted in part Insurer's motion to dismiss, dismissing Garage's claims for *quantum meruit* and those GBL § 349 claims that were barred by the statute of limitations. *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, No. 5:12-CV-777, 2013 WL 718457 (N.D.N.Y. Feb. 27, 2013).

On September 23, 2013, Garage filed an amended complaint. On March 31, 2015, the district court granted Insurer's motion for summary judgment as to all of Garage's claims. *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, No. 5:12-CV-777, 2015 WL 1481683 (N.D.N.Y. Mar. 31, 2015). The district court found that Garage failed to raise a genuine dispute of material fact that could support its claims that Insurer breached its contractual obligations to the First-Party assignors as to any of the categories of costs identified. *Id.* at *6–10. As to Garage's GBL § 349 claims, the district court found that Garage failed to raise a genuine dispute of material fact that could support its claims that Insurer engaged in materially misleading practices, and found in the alternative that these claims were precluded by N.Y. Ins. Law § 2601. *Id.* at *10–15.

II.   DISCUSSION

We review a district court's grant of summary judgment de novo, "resolv[ing] all ambiguities and draw[ing] all [reasonable] factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). For the court to grant summary

10

judgment, the movant must "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Where, as here, the burden of persuasion at trial would be on the non-moving party . . . the party moving for summary judgment may satisfy his burden of production under Rule 56 in either of two ways: (1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." *Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988) (citing *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting)).

A.    Breach of Contract

Garage alleges that Insurer failed to pay sufficient sums to fulfill its contractual policy obligations to cover the reasonable costs necessary to repair

11

the damaged vehicles to their pre-loss condition. To state a claim for breach of contract under New York law, "the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011). Insurer does not dispute that prongs (i) and (ii) have been met.

1.  Damages

Insurer argues that the First-Party Assignors (whose claims are asserted by Garage as their assignee) suffered no damages because their vehicles were repaired by Garage to their pre-loss condition. Insurer misunderstands the theory of this category of claim. Insurer was obligated to pay its insureds the "loss" on a covered vehicle, *i.e.*, the amount of money sufficient to return the vehicles to their pre-loss condition. Thus, the difference between what Insurer paid to Garage and the amount necessary to return the vehicles to their pre-loss condition constitutes damages suffered by the insureds on which Garage, as assignee, can bring suit.[2] *See Citibank, N.A. v. Tele/Resources, Inc.*, 724 F.2d

---

[2] In any event, the First-Party Assignors remained financially responsible to pay Garage for the difference between Insurer's payment and the full cost of repairs under the terms of the Authorization and Guidelines for Repairs.

266, 269 (2d Cir. 1983). There is no merit to Insurer's contention that the First-Party Assignors suffered no damages regardless of whether Insurer paid less than the cost of returning the vehicles to pre-accident condition. The District Court properly rejected Insurer's contention on this issue. *Nick's Garage*, 2015 WL 1481683, at *6.

2. Breach

The remaining question then is whether Insurer breached its contractual obligations to its First-Party Assignor insureds. The insured bears the burden at trial of establishing the reasonable cost of the repairs necessary to bring the vehicle to its pre-loss condition. *See Rizzo v. Merchants and Businessmen's Mut. Ins. Co.*, 727 N.Y.S.2d 250, 252 (2d Dep't 2001). However, on a motion for summary judgment, the burden is on the movant to show that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Accordingly, upon Insurer's motion for summary judgment, Insurer bears the burden of showing either that Garage lacked evidence needed to prove any element of its claims, or that the amount paid by Insurer was reasonably sufficient to repair the vehicle to its condition prior to the loss.

Insurer's motion papers were deficient in their attempt to satisfy this burden. In support of its entitlement to judgment, at times Insurer merely asserted—without support or explanation—that Garage had not produced evidence to support its claims. *See, e.g.,* J.A. 136 ("Plaintiffs have not produced any evidence . . . as to why the more expensive original manufacture parts were necessary"); Dkt. 103, at 1 n.1[3] ("Because Plaintiff failed to submit any admissible evidence relating to labor hour deficiencies, no material issue of fact[] exists with respect to this cost category."). Statements like these misperceive the allocation of burdens upon a motion for summary judgment. The argument that Garage "has not produced evidence" would have force at trial, or in other circumstances where the plaintiff bears the burden of proving every essential element of its claim. However, on a motion for summary judgment, it is the moving party's burden to show in its motion papers "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Thus, when a defendant moves for summary judgment, it is the *defendant* who must show entitlement

---

[3] All docket entries refer to the district court docket, No. 12 Civ. 777 (N.D.N.Y.).

to judgment, notwithstanding that, at trial, the plaintiff will have the burden of proving every element of its claim.

The mere assertion by a defendant moving for summary judgment that the plaintiff "has not produced any evidence" to support an essential element of the plaintiff's claim does not satisfy the burden that Rule 56(a) imposes. *See* 10A Fed. Prac. & Proc. Civ. § 2727.1, at 491–92 ("[T]he party moving for summary judgment cannot sustain its burden . . . merely by asserting that the nonmovant lacks evidence to support its claim."). A plaintiff is under no obligation to "produce" its evidence prior to trial, unless such an obligation arose in response to a discovery demand (or a court order) requiring the plaintiff to set forth the evidence supporting its claim. A moving defendant's mere assertion that a plaintiff "has not produced" evidence that could prove its claim fails to show that the plaintiff lacks the necessary evidence, unless defendant also shows that plaintiff was obligated by discovery demand or court order to produce the evidence or that he voluntarily undertook to make the showing.

There are many ways in which a defendant moving for summary judgment can satisfy the burden of showing entitlement to judgment. Among

15

them, defendant may, prior to moving for summary judgment, make a discovery demand requiring plaintiff to reveal the evidence that supports an essential element of the plaintiff's case. If, as in *Celotex*, 477 U.S. at 320, the plaintiff, in response, fails to show evidence capable of sustaining the plaintiff's burden of proof on that element, then the defendant can prevail on its motion, as provided in Rule 56(c)(1)(A), by "citing to [those] particular parts of materials in the record" that demonstrate the insufficiency of plaintiff's evidence. Or, if the plaintiff has made an admission in the record of the limited extent of its evidence, the moving defendant can satisfy the showing required by Rule 56(a) by pointing to the plaintiff's admission.

However, unless the moving defendant cites portions of the record that show its entitlement to judgment, an assertion by the defendant that the plaintiff "has not produced any evidence," without more, does not show that the plaintiff has insufficient evidence. Such a statement fails to show either that there is no genuine dispute as to any material fact or that the defendant is entitled to judgment as a matter of law. A defendant's motion for summary judgment based on such a statement should be subject to a motion to dismiss by reason of its facial deficiency, or to denial.

A plaintiff confronted with such a facially deficient motion sometimes cures defendant's error by undertaking to set forth the totality of its evidence in its opposition papers. Assessing the sufficiency of the evidence thus set forth, a court might conclude that there is no dispute over material fact and that defendant is entitled to judgment as a matter of law. However, absent such an undertaking on the part of a plaintiff, entry of judgment on the basis of a facially deficient summary judgment motion is not warranted. We see no reason why such a motion should not be subject to a motion to dismiss by reason of facial inadequacy, or simply to denial. [4]

---

[4] Of course, a district court is not compelled to dismiss or deny an inadequately supported motion for summary judgment. The court has numerous alternative available options. Among them, it may give the moving defendant time to make additional submissions that would cure the deficiency in its papers by citing to evidence that shows its entitlement to judgment (with a reasonable opportunity to the plaintiff to respond). *See* Fed. R. Civ. P. 56(e)(1)("[T]he court may . . . give an opportunity to properly support or address the fact [that has not been properly supported])." Alternatively, if the court is aware of record evidence not cited in the defendant's motion papers that appears to justify grant of summary judgment to the defendant, the court may give notice to the plaintiff citing those portions of the record (with reasonable time to respond) and then grant judgment to the defendant if the plaintiff's response to the court's notice confirms the inadequacy of its evidence or fails to show that there is a genuine dispute as to a material fact. *See* Fed. R. Civ. P. 56(f)(3)("After giving notice and a reasonable time to respond, the court may . . . consider summary judgment on its own after identifying for the parties material facts that may

*(Continued . . . )*

17

What we say here applies the Supreme Court's cornerstone summary judgment ruling in *Celotex*. The Supreme Court made clear that the defendant supported its motion for summary judgment by "not[ing] that [the plaintiff] had failed to identify, in answering interrogatories specifically requesting such information, any witnesses who could testify about the decedent's exposure to [defendant's] asbestos products." *Id.* at 320. In that circumstance, the moving party was "entitled to a judgment as a matter of law because the nonmoving party [had] failed to make a sufficient showing on an essential element of her case with respect to which she [had] the burden of proof." *Id.* at 323 (internal quotation marks omitted). The Court emphasized that "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."[5] *Id.* The same point was further emphasized

---

not be genuinely in dispute."). Or the court may dismiss the defendant's motion without prejudice to its subsequent resubmission with proper support. As provided in Fed. R. Civ. P. 56(e)(4), the court may "issue any other appropriate order."

[5] This Court has often quoted *Celotex*'s holding that "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving

*(Continued . . . )*

18

by Justice White, who stated in his concurring opinion, "[i]t is not enough to move for summary judgment . . . with a conclusory assertion that the plaintiff has no evidence to prove his case." *Id.* at 328 (White, J., concurring); *see also id.* at 332 (Brennan, J., dissenting) ("Plainly, a conclusory assertion that the nonmoving party has no evidence is insufficient. Such a 'burden' of production is no burden at all and would simply permit summary judgment procedure to be converted into a tool for harassment.") (citation omitted).[6]

In this case, Insurer's conclusory assertions that Garage had not produced evidence to support particular elements of its claims did not demonstrate the inadequacy of Garage's evidence or Insurer's entitlement to judgment as a matter of law. In this regard, the motion was facially inadequate.

---

party's case." *See, e.g., PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (quoting *Celotex*, 477 U.S. at 325); *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). These decisions did not absolve the movant of the obligation, articulated in *Celotex*, to "identify[] those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.

[6] Justice Brennan's analysis of the burdens did "not disagree with the [majority's] legal analysis." 477 U.S. at 329. His disagreement was predicated solely on a differing perception of its application to the facts of the case. *Id.* at 334.

### a. Labor Hours

In its Amended Complaint, Garage claimed that Insurer refused to pay for the labor hours necessary to repair the vehicles to their pre-loss condition. J.A. 256. Insurer's summary judgment motion with respect to this issue was deficient and should have been denied.

Insurer's motion for summary judgment, while demanding judgment on all issues, referred to only four categories of claims made by Garage (labor rates, parts, overhead expenses, and paint and materials charges). *See* Dkt. 73, at 5. It made no mention whatsoever of Garage's claims for deficiencies in payment for labor hours. In opposition, Garage pointed out Insurer's failure to address in any way its claims for deficiencies as to labor hours, and pointed out that its deficiency bills to Insurer included references to labor hour deficiencies. *See* Dkt. 88 ¶ 27. Insurer replied by demanding summary judgment as to labor hours "[b]ecause Plaintiff failed to submit any admissible evidence relating to labor hour deficiencies," Dkt. 103, at 1 n.1, and the District Court granted judgment to the defendant on that basis. With reference to the deficiency notices, the court observed that "Plaintiff has made no attempt to explain these documents or why the alleged [labor hour]

20

deficiencies identified therein were necessary to return the vehicles to their pre-loss condition." *Nick's Garage*, 2015 WL 1481683, at *10.

This was error. It reflected a misunderstanding of the respective burdens upon a defendant's motion for summary judgment. Because Insurer's motion failed to show entitlement to judgment with respect to labor hours, Garage was under no obligation to set forth its evidence on this issue. Garage merely pointed out to the court that Insurer's papers claiming entitlement to judgment on all of Garage's claims had completely omitted any mention of Garage's claims for insufficient payment of labor hours, calling the court's attention to the inclusion of this issue in its deficiency notices.

The district court essentially treated the plaintiff, upon the defendant's motion for summary judgment, as obligated, by the mere fact of the motion, to set forth evidence that could support the claim. As noted above, a plaintiff has no such burden on the defendant's motion for summary judgment. It is the defendant's burden to show entitlement to judgment. If the defendant had done so, the plaintiff would need to show that there is a genuine dispute as to a material fact. But if the defendant's papers failed to show the insufficiency of plaintiffs' evidence and entitlement to judgment, the plaintiff is entitled to

21

the dismissal of the motion without having to make any evidentiary showing. The motion for summary judgment, to the extent it covered Garage's claims for labor hours, should have been denied by reason of its obvious facial insufficiency.

### b. Parts

The district court also granted summary judgment to Insurer on the portion of Garage's breach of contract claims based on Insurer's payment for non-OEM repair parts rather than OEM repair parts. This, too, was error.

Insurer argued that it was entitled to pay for non-OEM parts because its policies provide: "In determining the amount necessary to repair damaged property to its pre-loss condition, the amount to be paid by [Insurer] . . . will be based on the cost of repair or replacement parts and equipment which may be new, reconditioned, remanufactured, or used, including, but not limited to: (a) original manufacturer parts or equipment; and (b) nonoriginal manufacturer parts or equipment." Confidential App. 32.

Insurer's argument is oversimplified. The fact that the policy permits basing the cost of repair on non-OEM parts does not mean that non-OEM parts will in all instances be sufficient to satisfy Insurer's contractual

22

obligations. Insurer is obligated to pay a sufficient sum to return the vehicle to its "pre-loss condition." This may or may not be possible using non-OEM parts for a particular repair. The provision quoted above on which Insurer relies means that Insurer may limit its payment to the price of non-OEM parts *when the use of such parts will "repair the damaged property to its pre-loss condition." Id.* (emphasis added). It does not follow that Insurer may limit its payments to the cost of non-OEM parts regardless of whether the use of such parts will, in the particular circumstance, repair the damaged property to its pre-loss condition.

While New York State law permits insurers to use the cost of non-OEM parts in their estimates, it requires that the part "shall equal or exceed the comparable OEM crash part in terms of fit, form, finish, quality and performance." 11 N.Y.C.R.R. §216.7(b)(5)(iii). This state-law requirement is "deemed to [be] part of the insurance contract as though written into it." *Salzman v. Prudential Ins. Co. of Am.*, 296 N.Y. 273, 277 (1947). Insurer's evidence failed to satisfy this requirement.[7]

---

[7] The evidence Insurer relied upon—that its MRRs do not always choose the lowest price part—falls far short. The testimony, from one of Insurer's MRRs, Corey Lee, showed only that he might choose to purchase a part from a more

*(Continued . . . )*

23

Insurer argues that it satisfied its initial burden of production (on this and other cost categories) by providing evidence that it engaged in good faith settlement negotiations with Garage. The argument fails. Insurers are statutorily required to make a good faith offer of settlement to the insured (or the insured's representative) to return the vehicle to its pre-loss condition. 11 N.Y.C.R.R. § 216.7(b)(7). Good faith refers to the insurance company's (or those acting on its behalf's) honest and fair state of mind. *See Good Faith*, Black's Law Dictionary (10th ed. 2014); *cf. Chem. Bank of Rochester v. Haskell*, 51 N.Y.2d 85, 91 (1980) (noting good faith under the UCC is defined as "honesty in fact in the conduct or transaction concerned"). An Insurer's good faith in making an offer of settlement does not necessarily mean that the amount offered is actually sufficient to cover the cost of repairing the vehicle to its pre-loss condition. The statutory requirement to negotiate in good faith is an

---

expensive supplier if it would reduce the amount of time it would take to do the repair. That testimony addressed neither Insurer's decision to use non-OEM parts for the First-Party Assignors' claims, nor whether those parts were functionally sufficient to return the vehicles to pre-loss condition.

Similarly, Garage's acknowledgment that Insurer paid for OEM parts in certain instances does not establish that Insurer *always* pays for OEM parts when they are necessary for a particular repair, and therefore does not negate breach for the times when Insurer did not pay for OEM parts.

24

additional requirement, over and above the contractual requirement to pay the cost of repairing the vehicle to pre-loss condition, not a substitute for it. Insurer's evidence of good faith negotiation therefore does not negate the claim that the amounts Insurer paid failed to satisfy its contractual obligations.

Insurer makes the further argument that it was entitled to summary judgment as to non-OEM parts because "[Garage] has not put forth evidence demonstrating the necessity of specific OEM parts for the Assignors' repairs." Appellee's Br. 27–28. In its opposition to Insurer's motion for summary judgment, Garage had offered affidavits of Michael Orso, Garage's President, and Rocco Avellini, an expert in the automotive repair industry, explaining that the use of OEM parts was necessary. *See* Dkt. 88 ¶ 44; J.A. 295–332 (Orso Declaration); J.A. 265–73 (Avellini Declaration). Reviewing this evidence, the district court characterized Orso's declaration as amounting to the mere assertion that Garage's customers are "people who care about their cars" who "would only accept a new OEM part." *Nick's Garage*, 2015 WL 1481683, at *9. Accordingly, the court granted summary judgment on the issue of payment for parts. *Id.*

25

If it were true that those affidavits relied solely on customer preference, the court might have been correct to conclude that summary judgment in favor of Insurer was warranted. But in fact, Orso and Avellini pointed to numerous deficiencies in non-OEM parts needed for the repairs, which would have prevented restoring the vehicles to pre-loss condition. The district court overlooked this evidence. J.A. 309–12. In addition to noting customer preference for OEM parts, Orso noted, for example, that non-OEM fenders are made of lighter gauge sheet metal (which can affect the success of airbag deployment), that the lenses of non-OEM headlamps are often distorted, that non-OEM heaters and puddle lamps are prone to malfunction, and that certain non-OEM parts do not fit correctly and leave gaps. J.A. 310–11. He went on to provide examples of instances in which non-OEM fog lamp bulbs and headlights did not fit. J.A. 312. Avellini explained that non-OEM bumpers have fewer fasteners, making it easier for them to become dislodged in an accident. J.A. 269. He added that non-OEM parts are not crash tested, rendering uncertain their performance in a collision. J.A. 270.

The district court ignored this evidence, and further discredited Orso's testimony by asserting that he had a "clear bias against the use of non-OEM

parts." *Nick's Garage*, 2015 WL 1481683, at *9. This was error. The district court was obligated to "draw all factual inferences in favor of the party against whom summary judgment is sought," not the other way around. *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994). With respect to the issue of non-OEM parts, the district court's grant of summary judgment was improper.

### c. Labor Rates

The district court ruled that Insurer was entitled to summary judgment on labor rate costs because "[t]he evidence in the record establishes that [Insurer's] labor rate was reasonably calculated and within the prevailing market rate at all relevant times," and that Garage did not present sufficient admissible evidence to raise "a material question of fact that [Insurer's] labor rate paid . . . was a breach of contract." *Nick's Garage*, 2015 WL 1481683, at *8. We disagree. Insurer did not present evidence sufficient to negate Garage's claim that Insurer breached its contractual obligations; Insurer demonstrated neither that the rates it paid were no lower than "the prevailing competitive labor rates charged in the area . . . as reasonably determined by [it],"

27

Confidential App. 32, nor the absence of a genuine dispute of material fact on that question.

The First-Party Assignors' insurance policies obligated Insurer to pay the amount necessary to repair the vehicle to its "pre-loss condition," subject to the proviso that Insurer would not pay more than the "prevailing competitive labor rate charged in the area where the property is to be repaired . . . , as reasonably determined by [Insurer]." *Id.*[8] Garage claims that the rates Insurer paid for various categories of work performed were below the prevailing labor rates.

Insurer argues, as the district court found, that its method for determining the prevailing labor rates is reasonable so as to satisfy its contractual obligations. Insurer presented evidence that it determines the prevailing labor rates using its Labor Rate Reference Guide ("Reference Guide"), which was finalized in January 2008. According to its Reference Guide, Insurer "allow[s] the marketplace to determine what the prevailing

---

[8] Throughout this discussion, unless otherwise specified, our reference to the "prevailing labor rates" is shorthand for the policy language of "prevailing competitive labor rates charged in the geographic area where the property is to be repaired." Because Insurer was obligated to pay the amount necessary to repair the vehicle to its "pre-loss condition," paying "not more" than the prevailing rates effectively meant paying the rates exactly.

rate is as *indicated by* [*Insurer's*] *ability to reach agreed prices for repair with shops in the marketplace.*" Confidential App. 62. Garage counters Insurer's evidence with evidence of higher labor rates posted by repair shops in the area as constituting the rates they charge, plus evidence of higher rates paid to it by other insurers.[9]

We conclude that Insurer has failed to show that there is no genuine dispute of material fact on the question and that it is entitled to judgment on it as a matter of law. There is a fundamental flaw in Insurer's approach to demonstrating, for the purpose of summary judgment, that the labor rates it paid to Garage were the prevailing competitive labor rate as reasonably determined by Insurer.

Insurer's evidence depends on the proposition that evidence of rates that repair shops are willing to accept *from Insurer* shows the prevailing competitive rate. But that is not necessarily so. An insurer such as Progressive may command a very large volume of business. The fact that repair shops may accept a labor rate paid by a particular insurer that may bring the shop a

_____

[9] Garage also noted multiple instances in which Insurer paid additional sums as a "labor rate concession," such that the effective labor rate paid for these particular repairs exceeded the rates Insurer typically paid to Garage.

large volume of business does not demonstrate that the shop, or shops generally, would accept the same rate in dealing with another insurer or a customer who has only one car to be repaired. In other words, Insurer's evidence that it pays labor rates based on its own ability to get repair shops to agree to those rates does not demonstrate that it pays what it is contractually obligated to pay—the rates that actually prevail in the market in the area where the repairs are performed. Indeed, Insurer's Reference Guide explicitly acknowledges that Insurer does not "conduct a formal market survey of rates in most states." *Id.*

Garage countered with two types of evidence: first, that higher labor rates than those paid by Insurer were posted by other repair shops; second, that other insurers have agreed to pay Garage higher rates. The evidence of rates posted at repair shops is of debatable persuasive value because it fails to show that the posted rates are actually paid, much less that the posted rates represent the prevailing labor rates. On the other hand, the fact that other insurers—and in some instances, even Insurer itself—paid rates higher than the rate typically paid by Insurer is sufficient to support a genuine dispute as to a relevant fact.

30

In any event, where the defendant Insurer is moving for summary judgment, plaintiff Garage does not need to demonstrate that the prevailing labor rate is in fact higher than the rate Insurer regularly demands and sets. Garage succeeds in defeating Insurer's motion for summary judgment if its evidence supports the existence of a genuine dispute as to a material fact on that question. Especially given the illogic of Insurer's proposition that the rate *it* can regularly command demonstrates the prevailing rate in the market—including rates paid by other insurers and uninsured individuals—Garage's evidence of higher rates paid to it is sufficient to show a genuine dispute.[10]

d.  Paint

The district court also granted Insurer summary judgment on Garage's claims that Insurer failed to pay sufficient sums for paint and refinishing

---

[10] We further find that the district court erred in concluding that Garage's expert report supported Insurer's position that its rates were "within the prevailing market rate." *Nick's Garage*, 2015 WL 1481683, at *8. Garage's expert report showed that, of the shops surveyed, the average posted or most typical hourly rates for various forms of labor were all higher than the rates Insurer offered to pay the First-Party Assignors. In concluding that this evidence supported the Insurer's position, the district court failed to draw reasonable factual inferences in favor of Garage, the non-moving party.

material costs. On this point, we conclude that the district court properly granted summary judgment to Insurer.

On its motion, Insurer demonstrated that it complied with its contractual obligations with respect to paint and refinishing material costs, and Garage failed to raise a genuine dispute of material fact on that issue. Insurer's policy limits the amount to be paid to the cost of "repair or replacement parts and equipment, as reasonably determined by [Insurer]." Confidential App. 32. In its motion, Insurer provided evidence that it reasonably determines paint and refinishing material costs through the use of estimating software. In response, Garage did not dispute the reasonableness of Insurer's use of estimating software, but rather pointed to its own use of different estimating software.

Garage's reliance on its own assertedly reasonable method for determining the cost of paint and refinishing materials is insufficient to raise a genuine dispute of material fact. The relevant question under the policy is not whether Insurer reached the most accurate estimate but whether its method for determining its costs was reasonable. The mere fact of showing that another reasonable estimating method could produce a higher cost is

32

insufficient, standing alone, to create a genuine dispute of material fact as to the unreasonableness of Insurer's method.

On appeal, Garage argues that the phrase "as reasonably determined by [Insurer]" in the policy language applies only to the prevailing labor rates. That argument misreads the clear contractual language. The district court properly construed the contract to require Insurer to pay the costs of paint and refinishing materials as reasonably determined by Insurer, and properly concluded that Insurer had demonstrated that it complied with that requirement through the use of estimating software.

Therefore, Insurer was entitled to summary judgment on Garage's breach of contract claims based on the costs of paint and refinishing materials.

### e.  Hazardous Waste Disposal and Database Access

We vacate the district court's grant of summary judgment as to Insurer's treatment of charges related to hazardous waste disposal and accessing the ALLDATA database.[11] We conclude that summary judgment was inappropriate for those two types of charges.

---

[11] The district court granted summary judgment to Insurer on all of Garage's breach of contract claims. Insofar as these claims included other "overhead expenses" which were raised by Insurer below, including energy surcharges,

*(Continued . . . )*

33

With respect to hazardous waste disposal, Insurer once again failed to satisfy its burden under Rule 56. In its briefs before the district court and statement of material facts below, Insurer did not mention, let alone show that it was entitled to judgment on, Garage's charges for hazardous waste removal.[12] In its opening brief, it made the conclusory assertion that Garage's contract claims are "riddled with charges that are extraneous and unnecessary to repair the First-Party Assignors' vehicles to their pre-loss condition," without specification of the hazardous waste charges specifically or demonstration that it was entitled to judgment on those charges. Dkt. 73, at 7–8. On this issue, Insurer's motion for summary judgment was facially insufficient.

With respect to the ALLDATA charges, there is a genuine dispute of material fact as to whether such charges constituted "overhead" so as to be outside of Insurer's contractual obligations. ALLDATA is an electronic

processing lienholder's checks, or charges for photocopy and fax expenses, Garage has failed to challenge those aspects of the district court's judgment in its briefs on appeal, and therefore has abandoned such claims. *See Hughes v. Bricklayers & Allied Craftworkers Local No. 45*, 386 F.3d 101, 104 n.1 (2d Cir. 2004) (claims advanced below but not raised on appeal were abandoned).

[12] It was Garage that, on the summary judgment motion, first identified hazardous waste removal as a category of line-item charges it was owed.

database that contains repair information. In its motion for summary judgment, Insurer argued that Garage's charges for ALLDATA were overhead charges "unrelated to the actual repair of motor vehicles," and therefore were not covered by the policy. *Id.* at 7. The testimony upon which Insurer relied, however, presents a genuine dispute of material fact as to how ALLDATA was used and whether it is properly considered overhead. Larry Zaleppa, who writes estimates for Garage, testified with respect to a particular line-item charge on a single estimate that it signified "[t]he time it takes . . . to go get the information off the car, the [vehicle identification number], the year, make and model for the technician to go in and look it up in [ALLDATA] and print it out, [and] read it so he's aware of what's going on."Confidential App. 833. Zaleppa further explained that the information provided by ALLDATA explains "how to repair vehicles" and is "put out by the manufacturers of the vehicle." *Id.* 829.

Drawing all reasonable inferences in favor of Garage, Zaleppa's testimony could establish that, to repair properly a particular vehicle to its pre-loss condition, a technician must review the specifications and procedures provided by the vehicle manufacturer for that specific make and model

35

vehicle. If that is the case, a jury could conclude that a technician needs to expend time to access and familiarize herself with the information provided by the database for a specific vehicle to perform a particular repair. Such efforts and costs are potentially distinguishable from those that might need to be expended generally for the operation of a business or the performance of technician work, which might properly be considered overhead and not chargeable to a particular client. Resolving the issue of how ALLDATA costs should be treated under the policy thus turns on a factual assessment of how the database operates and is used in practice.

There is, therefore, a genuine dispute of material fact as to whether Insurer's failure to pay Garage's ALLDATA charges breached its contractual obligations to pay the charges necessary to return the vehicles to their pre-loss condition.

* * *

In sum, we conclude that summary judgment should have been denied on Garage's breach of contract claims with respect to the cost categories of labor hour deficiencies, parts, labor rates, hazardous waste removal, and ALLDATA, but that summary judgment was properly granted on the issue of paint material costs. We also affirm the grant of summary judgment on the

36

issues noted in footnote 11, *supra*, which Garage has not challenged on appeal.

B.    GBL

The district court also granted Insurer summary judgment on Garage's claims brought under GBL § 349. The district court found that there was no dispute as to a material fact on whether Insurer engaged in materially misleading conduct and that Insurer was entitled to judgment as a matter of law. In the alternative, the court found that Garage's GBL claims were precluded by N.Y. Ins. Law § 2601. On appeal, Garage contends that the district court erred in entering judgment on two of its claims: that Insurer misled customers about (i) its labor rate payments and (ii) customers' ability to take their vehicles to the shop of their choice.[13] We conclude that the district court erred in granting summary judgment on Garage's claim that Insurer engaged in materially misleading acts with respect to its labor rate payments, and that such claims are not precluded by N.Y. Ins. Law. However, the district court properly granted summary judgment to Insurer on Garage's

[13] Before the district court below, Garage made other claims that Insurer engaged in deceptive practices in its claims processes and other categories of costs, but does not address, and thus has abandoned, those claims on appeal.

claim that Insurer misled consumers regarding their ability to use the repair shop of their choice.

### 1. Labor Rate Practices

General Business Law § 349 makes unlawful "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). To state a claim for a § 349 violation, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *City of New York v. Smokes-Spirits.com, Inc.*, 12 N.Y. 3d 616, 621 (2009); *see Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007). "Whether a representation or an omission, the deceptive practice must be likely to mislead a reasonable consumer acting reasonably under the circumstances." *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000) (internal quotation marks and citation omitted); *see also Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995) (defendant's conduct must be "deceptive or misleading in a material way"). The New York Court of Appeals' adoption of an "objective definition of

38

deceptive acts and practices . . . which may be determined as a matter of law or fact (as individual cases require)," was intended to avoid "a tidal wave of litigation against businesses that was not intended by the Legislature." *Oswego*, 85 N.Y.2d at 26.

There is a genuine issue of fact as to whether Insurer engaged in misleading practices concerning the labor rates it paid repair shops. Insurer's policy provides that it is obligated to pay labor rates up to "the prevailing competitive labor rates charged in the area where the property is to be repaired." Confidential App. 32. However, as discussed above in section II.A.2.c, Garage has put forth evidence that could establish that Insurer routinely refused to pay the prevailing competitive labor rates, and that the rates Insurer agreed to pay reflected not the prevailing competitive rates in the market but rates that a potentially large volume customer could prevail on repair shops to accept. Garage's evidence is sufficient to raise a genuine issue of fact on Garage's GBL claims that Insurer, as a matter of practice, paid labor rates below those it was obligated to pay pursuant to its insurance policy. *Cf., e.g.*, *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992) (affirming jury verdict where insurer engaged in deceptive tactics in

39

processing homeowner's claim following fire, including "refus[ing] to estimate, much less pay, the replacement cost value of the [insured's] personal effects as required by the policy").

Insurer's arguments on appeal are not persuasive. First, Insurer argues that its practice of good faith negotiation with Garage defeats the claim. The argument is inapposite. Insurer's readiness to negotiate with Garage in good faith is not incompatible with its having misled its policyholders about its payment of prevailing labor rates. Moreover, the irrelevance of Insurer's subsequent readiness to negotiate with Garage in good faith is underscored by the fact that New York law defines deceptive practices under § 349 by reference to the capacity of the practice to mislead, regardless of intent to deceive. "[I]t is not necessary under [GBL § 349] that a plaintiff establish the defendant's intent to defraud or mislead," *Oswego*, 85 N.Y.2d at 26; *see also Stutman*, 95 N.Y.2d at 29.

Second, Insurer argues that its practice cannot be deceptive because its practice is fully disclosed to consumers in the policy stating that the repair costs are limited to the prevailing competitive labor rate, and in Insurer's estimates stating the labor rates to be paid. Once again, the argument is

inapposite. These disclosures do not show Insurer's entitlement to judgment on Garage's GBL claims. The essence of Garage's claims is that Insurer *did not do* what its policy said it would do and that the rates listed on Insurer's estimates did not represent the prevailing competitive labor rates, as they purported to do. The cases on which Insurer relies are therefore distinguishable because, while Insurer does not concede the fact that the rates it pays are lower than the prevailing rate it represents it will cover, the defendants in those cases actually disclosed the very practices that were alleged to be deceptive. *See Ludl Elecs. Prods., Ltd. v. Wells Fargo Fin. Leasing, Inc.*, 6 A.D.3d 397, 398 (2d Dep't 2004) (including an automatic renewal provision in lease of equipment not deceptive under GBL § 349 because it was fully disclosed in the lease); *Sands v. Ticketmaster-N.Y., Inc.*, 207 A.D.2d 687, 687 (1st Dep't 1994) (dismissing GBL § 349 claim for excessive fees because record showed Ticketmaster always disclosed the fees charged).

Insurer also argues that there was no dispute as to a material fact concerning the other elements of a GBL § 349 claim. We disagree.

First, Plaintiff's evidence that Insurer, as a matter of practice, misled consumers and paid insufficient sums on claims pursuant to its standard form

contract "affects the public generally and, therefore, satisfies the requirements of 'consumer-oriented' conduct within the meaning of Section 349." *Nick's Garage*, 2015 WL 1481683, at *11–12; *see Oswego*, 85 N.Y.2d at 26–27 ("[P]laintiffs have satisfied the threshold test in that the acts they complain of are consumer-oriented in the sense that they potentially affect similarly situated consumers."); *N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.*, 102 A.D.3d 5, 12 (2d Dep't 2012) (describing conduct that is and is not "sufficiently consumer-oriented").

Second, Garage raised a question of material fact as to a GBL injury. As discussed above in section II.A.1, the vehicle owners were entitled to receive a sufficient amount of money to repair their vehicles to pre-loss condition, and Insurer's alleged failure to pay sufficient sums, if proved, constitutes a sufficient injury.

Third, Insurer argues that the § 349 claims of First-Party Assignors fail because they do not allege an injury independent of their contract damages.[14] The cases on which Insurer relies, however, do not establish such a

---

[14] Because only the First-Party Assignors have asserted contract claims, this argument does not impact the viability of the Third-Party Assignors' GBL claims.

requirement. Rather, those cases found no GBL injury "where the plaintiffs alleged damages in the amount of the purchase price of their contracts, but failed to allege that defendants had denied them the services for which they contracted." *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015) (emphasis omitted) (distinguishing *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009), and *Sokoloff v. Town Sports Int'l, Inc.*, 6 A.D.3d 185, 185 (1st Dep't 2004)).

Therefore, as to Garage's claim under the GBL that Insurer engaged in materially misleading conduct with respect to labor rates, Insurer failed to show entitlement to judgment as a matter of law. Summary judgment should have been denied.

## 2. Right to Choose Repair Shops

On the other hand, we agree with the district court's grant of summary judgment on Garage's claim that Insurer misled the Assignors as to their right to use the repair shop of their choice. Insurer's motion papers show that it clearly disclosed this right to consumers and that Garage has no evidence that would support a genuine dispute as to that fact.

Garage argues that, notwithstanding Insurer's revelation to consumers that they have the right to use the repair shop of their choice, it misleads them

on that question by limiting payment to what Insurer could pay at other repair shops and refusing to pay Garage's reasonable charges, effectively inducing consumers to use Insurer's favored shops in order to secure full coverage.

Garage's argument fails. Insurer clearly advised consumers of their right to use the shop of their choice. We affirm the grant of summary judgment dismissing Garage's GBL § 349 claim on this theory.[15]

\*        \*        \*

We therefore conclude that summary judgment was properly granted to Insurer on Garage's GBL claims based on customers' ability to choose repair shops, but should be denied on the GBL claims based on Insurer's labor rate practices.

---

[15] Garage offered declarations of consumers averring that they were misled by Insurer as to their right to choose the repair shop. This evidence is insufficient to sustain Garage's claim of deceptive practices under § 349. Insurer's evidence of its statements to consumers shows that, under the objective standard that governs § 349, its conduct was not deceptive, even if individual consumers claim to have been misled. Unlike the labor rate disclosures, Insurer here makes no representations about itself or its own conduct; it simply discloses its customers' rights, without any representations about what it will do with respect to those rights.

### 3. Preclusion

The district court also ruled, in the alternative, that Garage's GBL claims were precluded by N.Y. Ins. Law § 2601. *Nick's Garage*, 2015 WL 1481683, at *15. We conclude that Garage's claim of misleading practices as to prevailing labor rates is not precluded.

Section 2601 of the Insurance Law prohibits insurers from "engag[ing] in unfair claim settlement practices," and specifies various acts that constitute such unfair practices. N.Y. Ins. Law § 2061(a). Although Section 2601 makes the covered acts illegal, it does not allow for a private cause of action based on those acts. *See id.* §§ 2601(a)–(c); *Rocanova v. Equitable Life Assurance Soc'y of the U.S.*, 83 N.Y.2d 603, 614 (1994). By contrast, GBL § 349 generally makes unlawful "deceptive acts or practices in the conduct of any business, trade or commerce . . . in this state," N.Y. Gen. Bus. L. § 349(a), and explicitly provides for a broad private right of action for "any person who has been injured by reason of any violation of this section" to recover "actual damages or fifty dollars, whichever is greater." *Id.* § 349(h).

Insurer argues that where § 2601 of the Insurance Law prohibits a certain action by insurers, but does not allow for a private right of action, and

GBL § 349, which covers deceptive commercial practices generally, prohibits the same action and does provide a private right of action, the Insurance Law takes precedence as to a claim against an insurer, and no private claim may be brought under GBL § 349. This misunderstands the law of New York. We therefore vacate the district court's ruling.

In *Riordan*, 977 F.2d at 51, an insurer argued to us that § 2601, forming part of a "pervasive statutory scheme regulating unfair and deceptive acts and practice by insurance companies," precludes a private claim against insurance companies under GBL § 349. We rejected the argument, observing that it "ignores the plain language of GBL § 349(g), which states that '[t]his section shall apply to all deceptive acts or practices declared to be unlawful, whether or not subject to any other law of this state.'" *Id.* at 52. The New York courts agree. *See New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 321 (1995) ("[R]elief under [GBL § 349] is not necessarily foreclosed by the fact that the transaction involved an insurance policy . . . ." (citing *Riordan*)); *see also Joannou v. Blue Ridge Ins. Co.*, 289 A.D.2d 531, 532 (2d Dep't 2001) ("An insurance carrier's failure to pay benefits allegedly due its insured under the

terms of a standard insurance policy can constitute a violation of General Business Law § 349.").

In subsequent cases, we have recognized a limited preclusion of liability under § 349, which would not apply in the circumstances now before us. In *Conboy v. AT & T Corp.*, 241 F.3d 242 (2d Cir. 2001), the plaintiff argued that the defendant's harassing communications with a debtor (and family members), in violation of GBL § 601, which does not supply a private cause of action, constituted a "deceptive act" within the meaning of GBL § 349, rendering the defendant's conduct actionable under the latter statute. Because the harassing communications were not inherently deceptive and therefore could not qualify as a violation of § 349 (unless on the theory that they constituted violations of § 601), we ruled that a plaintiff "cannot circumvent" § 601's prohibition of a private claim by characterizing the violation of § 601 as a deceptive act in violation of § 349. *Id.* at 258.

Then, in *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187 (2d Cir. 2005), a plaintiff claimed that conduct by the defendant in violation of federal statutes—which did not depend on a deceptive practice and did not allow a private cause of action—was actionable under New York law if the violation

of federal law were characterized as a deceptive act that violates GBL § 349. We rejected that argument. Interpreting our earlier *Conboy* ruling, we held that when the challenged acts are not inherently deceptive so as to violate GBL § 349, regardless of whether they violate another statute, such acts cannot be re-characterized as "deceptive" simply on the grounds that they violate another statute which does not allow for private enforcement; otherwise, GBL § 349 would be permitted to derogate the policy embodied in the other statute precluding private enforcement. We explained that a GBL claim is viable where the plaintiff "make[s] a free-standing claim of deceptiveness under GBL § 349 that happens to overlap with a possible claim" under another statute that is not independently actionable, but fails where the violation of the other statute by conduct that is not inherently deceptive is claimed to constitute a deceptive practice that serves as the basis for the GBL § 349 claim. *Id.* at 200; *see also Schlessinger v. Valspar Corp.*, 21 N.Y.3d 166, 173 (2013) (citing *Broder* with approval).

These precedents do not help Insurer. Garage's plausible evidence that Insurer engaged in inherently deceptive conduct relating to labor rates supports a viable claim of violation of GBL § 349, regardless of whether the

48

conduct also violated § 2601 of the N.Y. Ins. Law. Our rulings in *Riordan*, *Conboy*, and *Broder* all sustain Garage's position on this question.

We conclude that the district court erred in ruling that the GBL § 349 claim relating to labor rates is precluded by N.Y. Ins. Law § 2601.

## CONCLUSION

Having considered all of the parties' arguments (whether or not discussed above), we conclude, for the foregoing reasons, and to the extent set forth above, the district court's grant of Insurer's motion for summary judgment is AFFIRMED IN PART, VACATED IN PART, and the matter is REMANDED.