386 F.3d 101
 Richard Burke HUGHES and Brian Burke, Plaintiffs-Appellants,
v.
BRICKLAYERS AND ALLIED CRAFTWORKERS LOCAL # 45, Bricklayers and Allied Craftworkers Region2 — Western New York Administrative District Council, International Union of Bricklayers and Allied Craftworkers, Daniel D. Rose, Jeffrey J. Herman, Gary J. Aberhorn, Scott E. Benk, Ronald G. Lechner, Steve Remington, Anthony C. Liscom, Roger C. Vaillancourt and James Wittman, Defendants-Appellees.
 No. 03-9091.
 United States Court of Appeals, Second Circuit.
 Argued: June 16, 2004.
 Decided: October 6, 2004.
 
 Appeal from the United States District Court for the Western District of New York, John T. Elfvin, Senior District Judge.
 Nathan A. Van Loon, Harris Chesworth & O'Brien, Rochester, NY, for Plaintiffs-Appellants.
 Seymour M. Waldman, Vladeck, Waldman, Elias & Engelhard, P.C., New York, NY, for Defendant-Appellee International Union of Bricklayers and Allied Craftworkers.
 John A. Collins, (Eugene W. Salisbury, on the brief), Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria LLP, Buffalo, NY, for Defendants-Appellees Bricklayers and Allied Craftworkers Local # 45, Daniel D. Rose, Gary J. Aberhorn, Scott E. Benk, Anthony C. Liscom, Roger C. Vaillancourt and James Wittman.
 E. Joseph Giroux, Jr., Creighton, Pearce, Johnsen & Giroux, Buffalo, NY, for Defendants-Appellees Bricklayers and Allied Craftworkers Region2 — Western New York Administrative District Council, Jeffrey J. Herman, Ronald G. Lechner and Steve Remington.
 Before: WALKER, Chief Judge, B.D. PARKER, Circuit Judge, MORDUE, District Judge.*
 B.D. PARKER, JR., Circuit Judge.
 
 
 1
 Plaintiffs-appellees Richard Burke Hughes and Brian Burke appeal from a judgment of the United States District Court for the Western District of New York (John T. Elfvin, Senior Judge) granting defendants summary judgment on claims brought under the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 401 et seq. Essentially Hughes and Burke contend that their suspensions from membership in the International Union of Bricklayers and Allied Craftworkers Local # 45 ("Local # 45" or the "Union") violated various provisions of the LMRDA because that form of discipline was not authorized by the constitution or by-laws of the Union. We conclude that the Union's constitution afforded broad authority to fashion remedies such as suspension that, while not explicitly mentioned in the Union's constitution or by-laws, are nonetheless permissible because they are less severe than the punishments authorized for appellees misconduct. Accordingly, we affirm.
 
 I. BACKGROUND
 
 2
 Hughes and Burke are both members of Local # 45. In February 2000 Hughes took the floor at a Local # 45 meeting and criticized its Executive Board for their handling of an incident arising from a jurisdictional dispute with another union. This criticism escalated into a heated argument between Hughes and the Board during which Hughes allegedly became disruptive and directed profanities at other Union members. Hughes was eventually thrown out of the meeting by the President of Local # 45, Daniel Rose, and retired to a local bar with other members where they charged their bar tab to the Union without authorization.
 
 
 3
 In March 2000 seven members of Local # 45 filed charges against Hughes under Article XIII, (1)(D), (H) and (K) and Appendice Code 5(1)(I), (L) and (S) of Local # 45's constitution and Code 5(1)(I), (L), (S), and (T) of the constitution of the International Union of Bricklayers and Allied Craftworkers ("International Union") based on his conduct at the February meeting. An internal trial was held in April 2000 in accordance with Code 6 of the International Constitution and Hughes was found guilty of "offensive, obscene and abusive language" and "threatening another union member with bodily harm." Hughes was fined $750 and suspended until January 2001 from membership privileges including attendance at meetings or union-sponsored events and from voting or running for office. In March 2000 Hughes and seven other union members were also charged with violating several provisions of the Union's constitution in connection with their unauthorized bar tab. Hughes was tried again in April 2000. He was found guilty on all charges, fined $500, suspended until January 2002 and placed on probation until January 2003. After this second conviction, Hughes was told that one more conviction would result in his expulsion from the Union. Hughes appealed both decisions to the Executive Board of the International Union. In May 2000, the Executive Board stayed the fines levied against Hughes pending the outcome of his appeals.
 
 
 4
 Some time later, Hughes began working for a non-union contracting company and in June 2000 was charged by the Union for this offense. After a trial, Hughes was again found guilty, fined $1000, and expelled from the Union. Hughes again appealed. The expulsion was stayed pending this appeal as well as the decision by the Executive Board on his other pending appeals.
 
 
 5
 In February 2001 the Executive Board issued a consolidated decision resolving Hughes' three appeals. The Executive Board remanded the conviction for Hughes' conduct at the February 2000 Union meeting. The Board concluded that defendant Daniel D. Rose, the President of Local # 45, had improperly participated in the trial and that since Hughes' criticism of the Union was protected by federal law, his remarks could not serve as a predicate for the charges. The Board also remanded the conviction for the bar tab incident, concluding that the evidence against Hughes was insufficient because it consisted only of the written statements of other participants whom Hughes had been unable to cross-examine. The conviction for non-union work was upheld but remanded for reconsideration of penalty given the other two remands. On remand, Hughes was retried on the first two charges but failed to attend. He was found guilty in absentia and fined $200. He did not appeal these decisions.
 
 
 6
 Burke was also charged with violating the Union constitution as a result of his conduct at a July 2000 meeting. According to the charges, Burke assaulted the Sergeant-at-Arms, Scott Benk, while Benk was in the process of removing a drunk and disruptive member from the proceedings. Burke claims that Benk assaulted the other man and that he was simply protecting the victim. Following a trial, Burke was found guilty, fined $450, and suspended from union membership until February 2001. Burke appealed and the Executive Board remanded the case concluding that Rose had improperly participated in, and presided over, the trial even though he had been involved in the incident.
 
 
 7
 In June 2001, Hughes and Burke commenced this federal action. Hughes alleged that: (1) he had been unlawfully charged and convicted by Local # 45 for exercising his free speech rights at the February 2000 meeting, (2) Local # 45 had violated its rules by suspending him from union membership when such punishment was not authorized, (3) the Executive Board's slow pace in handling his appeals damaged his ability to get work, (4) defendants violated § 415 of the LMRDA's mandate to inform union members of the Act's provisions because those provisions were not set forth in the Union constitution, and (5) the defendants defamed and blackballed him from employment in the area. Burke alleged that (1) he was stripped of his instructor position because of his exercise of his free speech rights, (2) the Union's constitution did not set forth the provisions of the LMRDA in violation of 29 U.S.C. § 415, and (3) the defendants defamed his character and blackballed him from local employment.
 
 
 8
 The defendants eventually moved for summary judgment, which the District Court granted with respect to all claims. As a preliminary matter, the District Court held that the Union had failed to show that its internal appeals procedures were adequate to address the plaintiffs' grievances and, therefore, that they had not failed to exhaust their administrative remedies. Further, the Court found that Hughes' and Burke's claims that they had been defamed and blackballed fell within the exclusive jurisdiction of the NLRB and were not cognizable under the LMRDA. The District Court concluded that the plaintiffs had failed to state a claim under § 411(a)(1) since they failed to allege discriminatory treatment compared to other members and that they had failed to raise genuine issues of fact as to their § 411(a)(2) claim because they presented no evidence that their speech, rather than their disruptive and abusive actions, led to their discipline. The Court also found the suspensions permissible under the LMRDA and the Union's rules. Finally, it concluded that no material issues of fact had been raised with respect to the § 415 claim because plaintiffs did not allege that they requested the terms of the LMRDA from the Union and the LMRDA did not require that its terms be set forth in the Union's constitution. Hughes and Burke appeal. We review a district court's grant of summary judgment de novo. Hellstrom v. United States Dep't of Veterans Affairs, 201 F.3d 94, 97 (2d Cir.2000).[1]
 
 II. DISCUSSION
 
 A. Authorization of Suspension
 
 
 9
 The LMRDA provides, in part, that: (1) Equal rights. Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.
 
 
 10
 (2) Freedom of speech and assembly. Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.
 
 
 11
 29 U.S.C. § 411(a). Hughes and Burke contend that suspension is not a valid form of discipline under the Union constitution or rules and is therefore not "reasonable" under §§ 411(a) or (b). Thus, their argument goes, they have raised genuine issues of material fact as to their equal rights and freedom of speech claims. The Union, on the other hand, contends that suspension is indeed authorized by the Union constitution's broad grant of authority to local chapters to fashion remedies for infractions of Union rules and that, under the circumstances, suspension was a reasonable punishment, permissible under the LMRDA.
 
 
 12
 We easily conclude that the suspensions imposed by Local # 45 on Hughes and Burke were authorized and reasonable.[2] First, the LMRDA does not bar suspension as a form of disciplinary action — in fact, the Act contemplates suspension. It explicitly provides that "[n]o member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing." 29 U.S.C. § 411(a)(5) (emphasis added). In addition, we have held that "union membership does not confer an unqualified right to exercise rights of membership" and stated that a union has the power to discipline members by suspending them from union privileges for a reasonable period provided they had violated a legitimate rule aimed at preventing disruption of union business and been afforded a full and fair hearing. Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10, 605 F.2d 1228, 1238-39 (2d Cir.1979); accord Reyes v. Laborers' International Union Local 16, 464 F.2d 595 (10th Cir.1972) (stating that the court was "not moved by appellant's argument that the suspension ... violated his rights as a Union member. Suspension is expressly recognized in 29 U.S.C. § 411(a)(5) as one of the disciplinary actions....").
 
 
 13
 Second, suspension from union membership is consistent with the Union's constitution and by-laws. Hughes and Burke contend that because suspensions are not expressly mentioned in the constitution's provisions relating to discipline, they are not authorized. They point to the provision in the Constitution which provides that "[a] Member who violates any provision of this Constitution or the District Council Constitution shall be fined not less than $10.00 nor more than $250.00, except as otherwise provided, and may, in appropriate circumstances, be removed from Office, barred from Office, or expelled from Membership." Local # 45 Const., art. XIII(1)(D). They also point us to the provisions of the Local # 45 constitution and the Constitution, Rules of Order and Codes of the International Union ("International Constitution"), which set forth the offenses for which they were charged and convicted. Each of these provisions sets forth the maximum fine that can be imposed and whether or not expulsion is a possible punishment for the offense. Hughes and Burke argue that since suspension is not mentioned as a possible sanction in any of these provisions, it was an unauthorized punishment.
 
 
 14
 We are unpersuaded. While it is true that Code 5 of the International Constitution, dealing with offenses, lists fines, expulsion, removal from office, and a bar on office holding as possible punishments for various offenses, nothing in that language suggests that these penalties are exclusive. Int'l Const., code 5, § 2. Rather, the more appropriate reading is that they are intended to define the maximum punishments for various offenses, specifically setting forth which offenses warrant particularly heavy sanctions, whether in the form of high fines or expulsion. Just as the Union would have the ability to set a fine that was less than the maximum, so too would the Union have the authority, when appropriate, to mandate suspension, a milder sanction than expulsion. Code 6, § 2(I)(2) supports this conclusion. It provides that "[t]he trial body may impose any penalty not inconsistent with the [International Constitution], or any applicable Constitution or law of an affiliate, including an order to perform or refrain from performing certain acts." If fines, expulsion, removal from office, or a bar on office-holding were the only permissible punishments, § 2(I)(2)'s language concerning orders to perform or refrain from certain acts would be superfluous. Thus, Code 6 explicitly provides the trial body with the authority to assign different punishments as long as they are consistent with other applicable rules. This provision would prevent the Union from imposing a fine above the maximum set by Code 5 or from expelling a member for an offense where expulsion was not a listed sanction. But the provision does not prevent the Union from suspending a member in circumstances where the more harsh sanction of expulsion would be authorized.
 
 
 15
 This natural reading of the International Constitution also comports with longstanding Union practice. The record establishes that the International has, quite logically, long viewed suspension as a far less drastic punishment than expulsion and that its Executive Board has affirmed numerous suspensions. The record also reflects that where the Board has reversed decisions involving suspensions, it has not done so because that remedy was unavailable, but for other reasons. We, of course, defer to a union's construction of its own constitution and rules unless that interpretation is patently unreasonable. Sim v. New York Mailers' Union No. 6, 166 F.3d 465, 470 (2d Cir.1999); Fulk v. United Transp. Union, 160 F.3d 405, 408-09 (7th Cir.1998); Newell v. Int'l Bhd. of Elec. Workers, 789 F.2d 1186, 1189 (5th Cir.1986); Stelling v. Int'l Bhd. of Elec. Workers, 587 F.2d 1379, 1389 (9th Cir.1978). Our conclusion that there is nothing unreasonable about the Union's interpretation of it's constitution and by-laws as authorizing suspensions in situations where the more drastic penalty of expulsion would theoretically be permissible compels us to defer to that interpretation.
 
 
 16
 Finally, our own case law supports the conclusion that suspension is authorized. In Rosario, for example, union members challenged their suspension from union meetings as unauthorized by the LMRDA. We rejected that claim, concluding that suspension does not mean, as the appellants argue here, that the union is "acting in some arbitrary fashion to suppress dissent or to sacrifice democracy in the interest of efficiency." 605 F.2d at 1239. Rather, we noted that suspension of a union member's right to attend meetings "cannot imperil union democracy or oppress the union member when the union would be entitled to suspend the member ... altogether" and that any reasonable sanction imposed in accordance with § 101(a)(5)'s due process requirements would be consistent with § 101(a)(1)'s equal rights guarantee. Id. Here, we hold that suspension from membership privileges does not threaten union democracy or unduly burden the union member when the offense committed would warrant total expulsion from the union. Since there is no contention that § 101(a)(5)'s procedural guarantees were disregarded, appellants' claim that § 101(a)(1) and (a)(2) were violated by the Union fails.
 
 
 17
 Hughes and Burke seek to distinguish Rosario on two grounds: (1) they contend that the union rules in that case explicitly permitted suspension, Rosario v. Dolgen, 441 F.Supp. 657, 661 (S.D.N.Y.1977), and (2) they argue that the union in Rosario only suspended the members from attending meetings but not from voting, nominating candidates for union office, or running for office. We do not find these distinctions material. First, just as the union rules in Rosario explicitly contemplated suspensions, we have found that the International Constitution's broad grant of disciplinary authority also authorizes reasonable suspensions; it merely does not do so explicitly. Second, there is nothing to indicate that if the suspension in Rosario had extended to other rights our Court would have held differently. In fact, we noted that even though the plaintiffs retained the right to vote, nominate candidates, and run for office, "there rights perhaps had little practical value to one barred from attending membership meetings." Rosario, 605 F.2d 1228, 1239 n. 15. Consequently, we conclude that the extent of the suspension is immaterial and that Local # 45 was authorized to suspend Hughes and Burke from union membership for a reasonable period of time when the offense committed was one for which the greater penalty of expulsion was authorized.
 
 III. CONCLUSION
 
 18
 The judgment of the District Court is affirmed.
 
 
 
 Notes:
 
 
 *
 The Honorable Norman A. Mordue, United States District Judge for the Northern District of New York, sitting by designation
 
 
 [1]
 On appeal, Hughes and Burke have abandoned certain claims advanced below by not raising them in their brief to this CourtStorey v. Cello Holdings, LLC, 347 F.3d 370, 380 n. 6 (2d Cir.2003) (issues not raised in opening brief are considered abandoned). They do not contend that the District Court erred in dismissing their "blackballing" claims as preempted by the NLRB's exclusive jurisdiction over unfair labor practices or that there was error in the dismissal of their defamation claims. Nor do they argue that their 29 U.S.C. § 415 claim that the Union constitution should explicitly set forth the provisions of the LMRDA was improperly dismissed. Accordingly, these claims have been abandoned on appeal.
 
 
 [2]
 We express no opinion as to whether the actual imposition of an unauthorized punishment serves to raise a material issue of fact as to the equal rights or free speech claims made by plaintiffs-appellants