16-3264
*Kimball v. Vill. of Painted Post*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of June, two thousand eighteen.

PRESENT:
> GERARD E. LYNCH,
> SUSAN L. CARNEY,
> > *Circuit Judges*,
> ALVIN K. HELLERSTEIN,[*]
> > *District Judge.*

_____

CODY A. KIMBALL,

> *Plaintiff-Appellant*,

> > v.                                         No. 16-3264-cv

VILLAGE OF PAINTED POST, TODD KIMMEY, OFFICER, MAYOR FRANKLIN, JOHN & JANE DOES, DONALD YOST, ROBERT HALM, in his individual and official capacities as Chief of Police,

> *Defendants-Appellees*.[‡]

_____

---

[*] Judge Alvin K. Hellerstein, of the United States District Court for the Southern District of New York, sitting by designation.

[‡] The Clerk of Court is directed to amend the caption to conform to the above.

FOR PLAINTIFF-APPELLANT:    A.J. BOSMAN, Bosman Law Firm, L.L.C., Rome, NY.

FOR DEFENDANTS-APPELLEES
VILLAGE OF PAINTED POST,
TODD KIMMEY, OFFICER,
MAYOR FRANKLIN, and ROBERT
HALM, in his individual and official
capacities as Chief of Police:    JEREMY J. HOURIHAN, Barclay Damon, LLP, Elmira, NY.

FOR DEFENDANT-APPELLEE
DONALD YOST:    JAMES S. WOLFORD, The Wolford Law Firm LLP, Rochester, NY.

Appeal from a judgment of the United States District Court for the Western District of New York (Siragusa, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on August 22, 2016, is **AFFIRMED**.

Plaintiff Cody Kimball appeals the District Court's grant of summary judgment to Defendants on her claims brought under Title VII and the New York State Human Rights Law ("NYSHRL"). Kimball claims that she was subjected to unlawful discriminatory and retaliatory treatment during her employment as a police officer for the Village of Painted Post from 2005 through 2008, and that the District Court erred when it concluded that the predominant facts on which she relied fell outside the statutory time period. She also argues that the District Court erred when it found that the statute of limitations applicable to the NYSHRL was not tolled during the pendency of her employment discrimination complaint before the Equal Employment Opportunity Commission ("EEOC") and, therefore, that her NYSHRL claims for individual liability against Donald Yost are untimely. We review an award of summary judgment *de novo*, *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 19 (2d Cir. 2014), and assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, to which we refer only as necessary to explain our decision to affirm.

2

## I.    Title VII Claims

To bring an employment discrimination claim in court under Title VII, an employee must first exhaust her administrative remedies by filing a complaint with the EEOC. *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003). A complaint alleging employment discrimination must be filed with the EEOC within 300 days of the discriminatory conduct. 42 U.S.C. § 2000e-5(e)(1). Because Kimball filed her EEOC complaint on September 9, 2008, she cannot recover for "discrete acts of discrimination or retaliation" that occurred before November 14, 2007. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002).

### A.  Hostile work environment

Kimball alleges that, during the full course of her employment at the Painted Post Police Department (the "Department") from 2005 to 2008, she experienced a hostile work environment on account of her sex, and that the Village of Painted Post (the "Village") is liable therefor under Title VII.

As described above, Kimball may not recover for "discrete acts" that occurred before November 14, 2007. Hostile work environment claims, however, are "composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Morgan*, 536 U.S. at 117 (quoting 42 U.S.C. § 2000e-5(e)(1)). Accordingly, a court may consider all of the acts that allegedly constitute the "unlawful employment practice" as long as at least one such act occurred within the 300-day time period. *Id.* Under this framework—known as the "continuing violation doctrine"—the proper inquiry for determining the timeliness of claims regarding acts that predate the 300-day cutoff is whether those acts are "part of the same actionable hostile work environment practice" as an act occurring after the cut off. *Id.* at 120. Separate acts are not properly treated as part of a single hostile work environment practice if they are "qualitatively different" from one another. *Fitzgerald v. Henderson*, 251 F.3d 345, 364 (2d Cir. 2001).

Kimball argues that the harassment she experienced during her time at the Painted Post Police Department constitutes a single actionable hostile work environment practice.

3

The acts that took place during defendant Donald Yost's tenure as Chief of Police in 2005 and 2006, however, differ significantly from the acts that took place after Yost's retirement on December 31, 2006. Yost engaged in a variety of harassing and even abusive behaviors toward Kimball during his tenure as Chief, such as "scream[ing]" at her "all the time," calling her offensive names, and, egregiously, pushing her into filing cabinets and choking her at the police station in late 2006—the act that led to his departure from the Department at the end of that year. *See* App'x at 747-48, 752-53. After Yost's retirement—or, at the very latest, after the Village police station's locks were changed in March 2007 to prevent Yost from entering the police station at will—that aggressive and abusive behavior toward her at the Department ceased. Kimball does not allege that, after Yost's retirement, she was "screamed" at, subjected to slurs about her gender, or physically assaulted at work. Rather, her claims for the subsequent period arise from incidents regarding overtime, discipline, and other issues described below. Accordingly, we conclude that the work environment practices that existed before Yost's retirement are "qualitatively different" from those that Kimball describes as occurring after his retirement, and her claims arising out of Yost's pre-retirement harassment are not timely.

This is not to say that Yost's pre-retirement harassment of Kimball is irrelevant to the remainder of her hostile work environment claim. The 2005 and 2006 events provide context for understanding Kimball's work environment as it was in 2007 and 2008. *See Fitzgerald*, 251 F.3d at 365 (finding time-barred events occurring during "Phase One" of plaintiff's alleged hostile work environment admissible to place "Phase Two" events in context). To recover on a claim for employment discrimination under Title VII, however, Kimball must establish that she experienced acts of discrimination after Yost's retirement that, *on their own*, are sufficiently "severe or pervasive" to constitute a hostile work environment, and that the Village is liable for those acts. *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009); *Fitzgerald*, 251 F.3d at 361-64.

Accordingly, we consider whether Kimball was subject to at least one act after November 14, 2007, that might reasonably be considered part of a "severe or pervasive" hostile work environment practice. Kimball asserts that her co-workers' alleged practice of

4

viewing pornography at the police station on the two shared department computers constitutes such an act. We have held that the presence of pornography in the workplace may provide a basis for a hostile work environment finding. *Patane v. Clark*, 508 F.3d 106, 114 (2d Cir. 2007).

On this record, however, Kimball has failed to establish that any such incident occurred that was part of a practice that was either severe or pervasive enough for a reasonable jury to find that she experienced a hostile work environment after Yost's retirement. Notably, Kimball did not testify that she saw pornographic images at her workplace after Yost retired. Instead, she averred that she discovered evidence suggesting that male officers were viewing pornography: she testified that, on "many" unspecified occasions in 2007 and 2008, she saw pornographic windows minimized on the toolbar of the computers at the police station, and the URLs of pornographic websites on occasion autopopulated when she used the work computers. App'x at 698-99. Her testimony is vague and conclusory, however. Although she testified that, on unspecified occasions, pornographic URLs autopopulated on the Department computers, the record does not suggest that these URLs were particularly graphic or degrading to women, nor does she describe the import of the URLs. The record falls short of supporting an inference of the severity needed to sustain her claims.

Nor does the record support an inference that the pornography-viewing practice of which Kimball complains was "pervasive." Kimball identified only two specific instances in two years in which she discovered evidence suggesting that other officers were viewing pornography on the Department's computers (one in February 2007 and one on May 26, 2008). Although she testified that she saw such evidence of viewing pornography "many times," her testimony is nonspecific and provides an inadequate basis for a jury determination that her colleagues' viewing was so common in the workplace as to be nearly inescapable—in which case a hostile work environment *may* have existed—or whether Kimball saw it on a number of occasions, but infrequently over the full course of her employment at the Department. *See* App'x at 698. Accordingly, Kimball has not provided an adequate basis for a reasonable jury to find a hostile work environment.

Contrary to Kimball's claims, Yost's post-retirement actions do not bolster her argument that she experienced an actionable hostile work environment in the Department after November 14, 2007. Certainly, Yost's reported post-retirement behavior—driving "slowly" past her while staring at her and making faces during Kimball's middle-of-the-night patrol shifts, and sitting outside Kimball's house in his car with his camera aimed at the house, App'x at 785—would be disturbing to a reasonable person, particularly in light of his alleged behavior pre-retirement. Kimball has not, however, adduced evidence demonstrating that the Village may be held liable for any post-retirement harassment perpetrated by Yost. Nothing in the record suggests that his actions were undertaken in his capacity as a consultant to the Department. On the contrary, the uncontroverted evidence is that the Department never consulted with Yost during the three-year period in which it paid him as a consultant. And, unlike those cases in which courts have found employers liable for the harassing actions of non-employees, here the Department had only the standard policing tools at its disposal; it had no special control over Yost's private activities that it could have used to protect Kimball. *See, e.g.*, *Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013) (finding that university-employer could be liable for actions of student-athletes because the university had a "high degree of control" over their behavior); *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1073-74 (10th Cir. 1998) (finding restaurant-employer liable for harassing actions of customers because it could have asked customers to leave workplace).

Accordingly, we conclude that the record evidence is inadequate to establish the existence of a hostile work environment in the period after November 14, 2007 until her resignation. The District Court correctly dismissed Kimball's claim on that basis.

**B. Other allegations of sex discrimination**

Kimball's other sex discrimination claims against the Village under Title VII are subject to the *McDonnell Douglas* burden-shifting framework. *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014) (per curiam) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). To prevail, Kimball must first establish a prima facie case of sex discrimination by showing "(1) that she is a member of a protected class; (2) that she was qualified for employment in the position; (3) that she suffered an adverse employment

6

action; and, in addition, has (4) some minimal evidence suggesting an inference that the employer acted with discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015). Once she makes that showing, "the burden then shifts to the [Village] to give a legitimate, non-discriminatory reason for its actions. If the [Village] does so, the burden then shifts back to the plaintiff to show that the [Village's] explanation is a pretext for [sex] discrimination or retaliation." *Kirkland*, 760 F.3d at 225 (internal citation omitted).

Kimball identifies four employment actions taken by the Department that she contends were adverse and the result of unlawful sex discrimination: she alleges that (1) she received lower pay than similarly situated male officers; (2) she was unfairly reprimanded; (3) in 2008, the amount of overtime that she received decreased significantly; and (4) unlike other officers, she was not fitted for a bulletproof vest.[1]

Kimball's first argument, regarding an asserted pay differential, is barred by the release that she signed in May 2008 in consideration of a $1,250 settlement payment by the Village. In that release, she agreed not to pursue all "past claims for wages[] and benefits as a Village employee, whether contractual or not." App'x at 199. Kimball argues that the release is unenforceable because she signed it under the influence of narcotic medication. But under New York law, voiding the agreement would require Kimball to return the consideration paid by the Village. *See Kamerman v. Curtis*, 285 N.Y. 221, 225-26 (1941). Kimball admits that she has not done so. Accordingly, even if the release might at one time have been voidable, it is still in effect and bars this claim.[2]

---

[1] During oral argument, Kimball's counsel referred to an additional alleged act of discrimination, one not mentioned in her brief: that she received a cardboard sign for her locker instead of an enamel one. Even were we to treat this claim as preserved, the act alleged does not constitute an "adverse employment action" because it did not "affect[ ] the terms, privileges, duration, or conditions of [Kimball's] employment." *Yerdon v. Henry*, 91 F.3d 370, 378 (2d Cir. 1996) (internal quotation marks omitted).

[2] Kimball also argues that Defendants waived any defense predicated on the release by failing to plead it as an affirmative defense. Kimball herself, however, failed to argue waiver in the District Court, thus forfeiting the point on appeal. In any event, we have generally permitted district courts to entertain unpleaded affirmative defenses at the summary judgment stage "in the absence of undue prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant, futility, or undue delay of the proceedings." *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003); *see also Rose v. AmSouth Bank of Fla.*, 391 F.3d 63, 65 (2d Cir. 2004). Because Kimball does not allege that she was unduly prejudiced by Defendants' failure or that the Village acted in bad faith, we will not disregard Defendants' arguments regarding the effect of the release.

7

As to the three remaining allegedly discriminatory acts, Kimball has failed to submit even "minimal evidence" that her treatment was attributable to a discriminatory motivation. *Littlejohn*, 795 F.3d at 307. Kimball does not dispute that she committed the acts that gave rise to reprimands, or that the acts violated Department rules. Instead, she argues that she was treated differently for those violations than were the male officers who engaged in similar violations. For example, she argues that she was reprimanded for leaving a fork in a patrol vehicle, and that a male officer did not receive an equivalent reprimand for leaving a knife in a patrol vehicle on a later occasion. The record, however, does not bear this claim out. The evidence established that the male officer in question received a Counseling Memorandum regarding his actions, and the record contains no evidence that the male officer's reprimand was not substantially equivalent to the reprimand received by Kimball.[3] Nor does Kimball's tentative suggestion that she, and not the male officer, may have lost a vacation day for the infraction suffice to create a genuine dispute of material fact.

The record is also devoid of evidence supporting an inference that Kimball was denied overtime shifts or a properly-fitted vest because of her sex. No evidence suggests that Kimball lost more overtime in 2008 than did male officers. In fact, with regard to overtime shifts during "Colonial Days"—the only specific example of overtime denial adduced by her—Kimball testified simply that she was "away" during the sign-up and that all overtime shifts were full when she returned. App'x at 767. As to the vest, she testified that she was also on vacation when the Department conducted fittings, and was permitted to send in her own measurements to obtain a fitted vest. We have been directed to no evidence suggesting that the Department was motivated by a discriminatory animus in either instance.

---

[3] Kimball's assertion that the male officer was not actually punished, or that his punishment was delayed, is unsupported by the record. Kimball testified in support of her assertion that she did not find the Counseling Memorandum, which is dated May 30, 2008, in the male officer's file when she left her employment in June 2008. She fails to explain, however, how she accessed his file or why she would have been able to locate reprimands issued to her co-workers in any event, leaving undisputed the evidence that her male colleague was in fact censured.

8

## C. Retaliation

Retaliation claims under Title VII are also governed by the *McDonnell Douglas* burden-shifting framework. *Kirkland*, 760 F.3d at 225. To make out a prima facie case of retaliation, the plaintiff must show (1) "participation in a protected activity," (2) "the defendant's knowledge of the protected activity," (3) "an adverse employment action," and (4) "a causal connection between the protected activity and the adverse employment action." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013) (internal quotation marks omitted). After a plaintiff establishes a prima facie case, the burden shifts to the employer to establish a non-discriminatory reason for its actions.

Kimball identifies a number of allegedly retaliatory "adverse employment actions" taken by the Department, including her reassignment from a Step 7 to the lower Step 6 on the Department's salary scale and her receipt of fewer overtime shifts in 2008 than in prior years. Many of these actions took place during Yost's tenure as chief and, thus, claims related to them are time-barred under the 300-day rule described above. To the extent that Kimball identifies adverse actions that are not time-barred, she has again failed to establish a causal connection between those actions and any particular protected activity. The District Court properly granted summary judgment to Defendants on Kimball's Title VII retaliation claim.

## II.     NYSHRL Claims

Claims brought under the NYSHRL are subject to a three-year statute of limitations. *Koerner v. State of New York*, 62 N.Y.2d 442, 446 (1984). The District Court concluded that Kimball's NYSHRL claims were untimely because Kimball filed her complaint in court on May 21, 2012—more than three years after her employment with the Department ended. Kimball argues that the statute of limitations for her NYSHRL claims should be tolled during the three-and-one-half year period during which her discrimination charge was pending before the EEOC. She maintains that her complaint was "automatically dual-filed" with the NYSDHR under a Worksharing Agreement between the EEOC and the New York State Division on Human Rights ("NYSDHR") and because she checked a box on a filing form directing the dual filing. Appellant's Br. at 15-16. Under her theory, the three-year

9

statute of limitations period on her NYSHRL claims did not run between September 9, 2008, and February 23, 2012, and claims based on events occurring after December 7, 2005, should be considered timely.

It is unnecessary, however, for us to address the merits of Kimball's tolling argument because, even if the District Court erred in concluding that the filing of charges with the EEOC did not affect the timeliness of state claims, Kimball's EEOC complaint did not give specific notice of her NYSHRL claims against Yost.[4] In fact, Kimball's September 9, 2008 EEOC complaint does not reference Yost at all.[5] Our view about the scope of Kimball's EEOC complaint is reinforced by the fact that Yost was never served with a copy of it, even though New York law requires the NYSDHR to serve a copy of the complaint "upon the respondent and all persons it deems to be necessary parties" in the course of making a "prompt investigation" of the allegations therein. N.Y. Exec. Law § 297(2)(a). We thus read Kimball's EEOC complaint not to include any state law claim against Yost individually.

Thus, we conclude that the statute of limitations ran on Kimball's NYSHRL claims against Yost during the time her complaint was pending before the EEOC from 2008 to 2012. Accordingly, the three-year limitations period had lapsed by May 21, 2012, when Kimball filed her complaint.

* * *

---

[4] Although, in her Complaint, Kimball pleaded claims under the NYSHRL against all Defendants, she does not discuss her claims against Defendants other than Yost in her briefs on appeal. She therefore has abandoned her NYSHRL claims against other Defendants. *See Lore v. City of Syracuse*, 670 F.3d 127, 149 (2d Cir. 2012); *Hughes v. Bricklayers and Allied Craftworkers Local No. 45*, 386 F.3d 101, 104 n.1 (2d Cir. 2004).

[5] Although the August 11, 2008 letter submitted by Kimball's lawyer to the EEOC contains references to Yost's harassing behavior, that letter is not an EEOC charge within the meaning of 42 U.S.C. § 2000e-5. An EEOC charge must be sworn, 42 U.S.C. § 2000e-5(b), and the EEOC will not call for a response to a complaint until such verification is provided, *Edelman v. Lynchburg Coll.*, 535 U.S. 106, 113-18 (2002). Kimball never verified the allegations about Yost contained in her lawyer's August 11, 2008 letter. (Kimball's lawyer included a "Verification" with the letter, but it is plain from their substance he did not have personal knowledge of the facts asserted in the letter.) Unsworn allegations may amend an EEOC charge only "insofar as they 'clarify and amplify allegations made' in the original charge or 'alleg[e] additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge.'" *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 83 (2d Cir. 2001) (quoting 29 C.F.R. § 1601.12(b)) (alteration in original). Accordingly, our analysis of the scope of Kimball's EEOC complaint is limited to the conduct described in her September 9, 2008 complaint.

We have considered the remainder of Appellant's arguments and conclude that they fail to provide grounds for vacating the District Court's judgment. Accordingly, the judgment of the District Court is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court