*El Chaar v. NYU College of Dentistry*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of April, two thousand twenty-five.

PRESENT:

> BARRINGTON D. PARKER,
> BETH ROBINSON,
> MYRNA PÉREZ,
> *Circuit Judges.*

_____

DR. EDGARD EL CHAAR,

> *Plaintiff-Appellant,*

v.                                                                    No. 24-1169

NEW YORK UNIVERSITY COLLEGE OF DENTISTRY,

> *Defendant-Appellee.*

_____

FOR PLAINTIFF-APPELLANT:              DAVID BOIES, Boies, Schiller & Flexner LLP, Armonk, NY (Michael J. Passarella, Stephan P. Ross, Olshan Frome Wolosky LLP, New York, NY; Valecia Battle,

Boies, Schiller & Flexner LLP, Armonk, NY, *on the briefs*)

FOR DEFENDANT-APPELLEE:  SUSAN D. FRIEDFEL (Poonam Sethi, *on the brief*) Jackson Lewis P.C., White Plains, NY

Appeal from a judgment of the United States District Court for the Southern District of New York (Torres, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on March 29, 2024, is **AFFIRMED** in part and **VACATED** in part.

Plaintiff-Appellant Dr. Edgard El Chaar appeals the district court's summary judgment for Defendant-Appellee New York University College of Dentistry ("NYU") on his employment discrimination and retaliation claims. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision.

El Chaar immigrated to the United States from Lebanon in 1993.[1] He held a part-time faculty position in the NYU College of Dentistry from 1995 until 2012.

---

[1] Our description of the facts is drawn from the summary judgment record viewed in the light most favorable to El Chaar, as the non-moving party. *See Byrne v. Rutledge*, 623 F.3d 46, 52 (2d Cir. 2010).

During this time, several faculty members made derogatory comments about his race and ethnicity.

In August 2013, El Chaar returned to NYU as the Program Director of the Postgraduate Program in Periodontology. The derogatory remarks about his race and ethnicity continued. After a series of complaints to Dr. Peter Loomer, Chair of the Department of Periodontology and Implant Dentistry, in August 2017 El Chaar filed a complaint with NYU's Office of Equal Opportunity ("OEO") alleging discrimination and retaliation by Dr. Loomer and two other colleagues. In February 2018, the OEO reported to Dr. Charles Bertolami, Dean of the College of Dentistry, that the evidence as a whole supported a finding of a hostile work environment.

In the fall of 2018, after Loomer announced that he would be resigning as Department Chair, El Chaar told Bertolami he was interested in the Department Chair position. When Bertolami subsequently informed El Chaar that he was appointing someone from another department to serve as Interim Chair, Bertolami said, "We are not appointing the chair because of your complaint to OEO. We need to have a chilling period. And you should have been the acting chair, but because of your complaint, we can't—I can't put you there." App'x 280. El Chaar

subsequently complained to OEO that Bertolami's choice of someone else to serve as Interim Chair was retaliatory.

In a recorded June 2020 conversation, as Bertolami was contemplating a search for a permanent chair, Bertolami told El Chaar he would have been "a logical choice" to serve as Interim Chair, but that he did not appoint El Chaar "for political reasons." *Id.* at 2003. El Chaar told Bertolami that his relationship with the faculty had improved and that he had made peace with "the main instigator" of the prior conflicts. *Id.* at 2006. After this conversation, Bertolami convened a committee to search for a permanent Chair.

The search committee named El Chaar one of the four finalists for the position. Each finalist interviewed with members of the executive committee and presented a seminar to faculty members. Bertolami also decided to send a survey to the faculty to solicit their feedback on the finalists. El Chaar testified that several faculty members campaigned to promote other candidates over him in response to the survey. Approximately forty faculty members completed the anonymous survey, and El Chaar received the most first-place rankings and the most last-place rankings. Based on the narrative responses, "some faculty thought very highly of" El Chaar and others wrote that "he was 'vindictive,' 'divisive,' 'narcissistic,'" and

4

that he "'bullies' faculty and residents." *Id.* at 89 ¶ 177. Ultimately, Bertolami selected an external candidate for the Chair position. El Chaar resigned shortly thereafter.

El Chaar sued NYU in state court, alleging a hostile work environment, discrimination, and retaliation under 42 U.S.C. § 1981, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). NYU removed to federal court and then moved for summary judgment. The district court granted NYU summary judgment on El Chaar's federal claims and declined to exercise supplemental jurisdiction over his state- and city-law claims. *El Chaar v. New York University College of Dentistry*, No. 22-cv-856, 2024 WL 1348525, at \*12 (S.D.N.Y. Mar. 28, 2024).

We review the district court's grant of summary judgment without deference to the district court. *Byrne v. Rutledge*, 623 F.3d 46, 52 (2d Cir. 2010). If, construing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact, then the movant is entitled to judgment as a matter of law. *Id.*

## I.       Hostile Work Environment Claim

The statute of limitations for § 1981 claims is four years.  *Banks v. General Motors, LLC*, 81 F.4th 242, 260 (2d Cir. 2023).  Because El Chaar filed his complaint in state court on October 6, 2021, all claims that accrued before October 6, 2017, are time-barred.  It is undisputed that the conduct giving rise to the February 2018 OEO Report occurred before October 6, 2017.

Because the "very nature" of hostile work environment claims "involves repeated conduct," a claim is not time-barred "so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period."  *National R. R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115, 122 (2002).[2]  El Chaar does not point to any admissible evidence that an act contributing to the hostile work environment occurred within the limitations period.  That omission is fatal to his hostile work environment claim.

On appeal, El Chaar points to a July 2019 letter to the Interim Department Chair in which he complained that the hostility had not stopped.  But that letter, by itself, provides insufficient evidence that any incidents constituting "part of the

---

[2]  In quotations from caselaw and the parties' briefing, this summary order omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

same discriminatory pattern or practice of mistreatment" took place within the limitations period. *King v. Aramark Servs. Inc.*, 96 F.4th 546, 562 (2d Cir. 2024).

El Chaar also contends that, within the limitations period, NYU failed to investigate his complaints of retaliation and ongoing harassment. But, here too, a jury could not reasonably conclude, based on the evidence El Chaar has adduced, that any alleged failures to investigate were part of the same course of conduct as the offensive statements that gave rise to his August 2017 OEO complaint. *Cf. King*, 96 F.4th at 562 (holding that misdirected investigation of employee's complaints could be part of continuing course of conduct underlying hostile work environment claim where alleged harasser was involved in investigation). Moreover, an employer's failure to investigate a discrimination complaint cannot, by itself, "contribute[] to or constitute[] a hostile work environment" absent a showing that the failure altered the terms and conditions of the employment. *Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 724 (2d Cir. 2010).

Lastly, El Chaar contends that the ineffectiveness of NYU's response to his August 2017 OEO Complaint, as evidenced by various leaders' failure to engage with the trainings OEO prescribed, was part of the continuing course of discriminatory conduct. *Cf. Snell v. Suffolk County*, 782 F.2d 1094, 1103–04 (2d Cir.

1986) (discussing when an employer will be liable for insufficiently responding to employees' hostile acts). But inadequate engagement by leadership in remedial trainings is not in itself part of the continuing course of conduct creating a hostile work environment, and El Chaar has not identified an act contributing to the hostile work environment that occurred within the limitations period. Because El Chaar's hostile work environment claim was untimely, the district court properly awarded NYU summary judgment on that claim.

## II.  Retaliation Claims

To succeed on a retaliation claim under § 1981, a plaintiff must prove that their protected activity was a but-for cause of an adverse employment action. *Banks*, 81 F.4th at 275. An adverse employment action includes passing an employee over for promotion due to their complaint of a racially hostile work environment. *See Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684, 693 (2d Cir. 1998).

A § 1981 retaliation claim can be proven by direct or circumstantial evidence. *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015). When relying on circumstantial evidence, a plaintiff must first establish a *prima facie* case[3]

---

[3] A *prima facie* case is a one that is sufficient to establish a plaintiff's claim "unless disproved or rebutted." *Prima Facie*, BLACK'S LAW DICTIONARY (12th ed. 2024).

of retaliation. The burden then shifts to the employer to articulate a legitimate, nonretaliatory reason for the adverse employment action. *Id.* Upon that showing, the burden shifts back to the plaintiff to prove that the protected activity was a but-for cause of the adverse action. *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013). We address El Chaar's retaliation claims in turn.

### A. Interim Chair

El Chaar alleges that Bertolami retaliated against him for his OEO complaint by not appointing him Interim Chair. The district court granted summary judgment for NYU because it concluded that, while El Chaar had established a *prima facie* case of retaliation based on Bertolami's statement, he failed to show that NYU's proffered reason for appointing another individual to the Interim Chair position was pretextual. *El Chaar*, 2024 WL 1348525, at *8–9. We disagree.

The burden-shifting framework is inapplicable here because El Chaar presents direct (not circumstantial) evidence of retaliation. *See Porter v. Dartmouth-Hitchcock Med. Center*, 92 F.4th 129, 149 (2d Cir. 2024). Based on El Chaar's deposition testimony, Bertolami—the decisionmaker—specifically told El Chaar that he "should have been the acting chair" but that Bertolami would not appoint him "because of [El Chaar's] complaint to OEO." App'x 280. This is more than

sufficient to show a genuine dispute over whether El Chaar's complaint was a but-for cause of his being passed over for the job of Interim Chair. *See Bellamy v. City of New York*, 914 F.3d 727, 746 (2d Cir. 2019) (a "plaintiff's testimony alone may be independently sufficient to raise a genuine issue of material fact"). For this reason, the district court erred in awarding NYU summary judgment on this claim.

### B. *Permanent Department Chair*

The Permanent Department Chair appointment is another matter. Even assuming that El Chaar could make out a *prima facie* case of retaliation in connection with the Department Chair appointment, El Chaar did not demonstrate a genuine dispute as to whether NYU's legitimate, non-retaliatory reason for selecting a different candidate for Department Chair was pretextual. NYU's proffered reason was that, even though El Chaar was qualified, the individual it ultimately appointed as Department Chair was more qualified in several respects.

In particular, it is undisputed that Bertolami preferred "a tenured full professor"—which El Chaar was not—and that he wanted to appoint "a consensus builder; and someone very good at interpersonal relationships." App'x 87 ¶ 169. The individual who was appointed Department Chair was a tenured full professor

and had credentials that "suggested strong interpersonal skills, academic record, reputation and leadership." *Id.* at 91 ¶ 182.  Although El Chaar was the executive committee's consensus *second* choice for the position, he was not their first choice because he was not on a tenure track; he had been rejected for promotion from clinical associate professor to clinical professor and for membership in the Academy of Distinguished Educators; and "he was emotional and divisive, using terms like 'friends' and 'enemies' to describe faculty in the Department." *Id.* at 91 ¶ 183.  This evidence is not disputed, and it supports NYU's claim of a legitimate, nonretaliatory basis for its hire.

None of El Chaar's arguments to the contrary are persuasive.  First, Bertolami's reference to the OEO complaint in the context of his decision to appoint an external *interim* chair in 2018 can't reasonably support an inference that, in the face of the above evidence—including the survey results, which indicated that El Chaar was a divisive figure—El Chaar's OEO complaint was a but-for cause of the decision to appoint a different candidate as a permanent chair.[4]

---

[4] Insofar as El Chaar argues that an appointment to the Interim Chair position would have better positioned him to get the permanent Department Chair post through NYU's open hiring process, his contention is entirely speculative.  He points to no evidence in the record indicating that the factors that led NYU to appoint its preferred candidate would have been any different.

11

Moreover, El Chaar points to insufficient evidence that Bertolami's decision to survey the department about the finalists was pretextual. It is undisputed that Bertolami regularly sought input from faculty in making hiring decisions and had, in the context of prior searches, conducted "listening tour[s]" seeking faculty input. App'x 90 ¶ 179. And it is undisputed that, because the COVID-19 pandemic made it difficult for the faculty to gather in person, Bertolami solicited the feedback in writing. Without more, the fact that Bertolami relied upon a survey of the faculty doesn't itself show retaliatory intent.

Nor has El Chaar shown a genuine dispute over whether the survey served as an improper conduit for retaliatory animus by the very people who had created a hostile work environment. Bertolami sent the survey to 77 faculty members, only two of whom were named in El Chaar's OEO complaint. And El Chaar doesn't allege that feedback from either of those two individuals was determinative or that they were otherwise involved in promoting other candidates over him. Rather, the opposition to his candidacy was led by individuals who were not named in the OEO report.

In sum, El Chaar has not demonstrated a genuine dispute of material fact as to whether his protected activity was a but-for cause of NYU's passing him over for the position of permanent Department Chair.[5]

\* \* \*

For the above reasons, the District Court's judgment is **AFFIRMED** in part and **VACATED** in part. We vacate only the district court's judgment as to El Chaar's claim that NYU retaliated against him for protected activity when it declined to appoint him as Interim Chair.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[5] El Chaar also brought a discrimination claim based on NYU's failure to promote him to the Department Chair position. Because his appeal briefs do not mention this claim, El Chaar has abandoned any challenge to the district court's judgment for NYU on that count. *See Hughes v. Bricklayers and Allied Craftworkers Local No. 45*, 386 F.3d 101, 104 n.1 (2d Cir. 2004) (issues not raised in opening brief are considered abandoned).